Estate of Lube: Stallman, Claimant, Appellant, vs.
Gosse, Administratrix, Respondent.

*May 27—June 21, 1937.*

For the appellant there was a brief by *Corrigan, Backus, Sullivan & Backus,* and oral argument by *Francis H. Parson,* all of Milwaukee.

For the respondent there was a brief by *Herman Leicht,* and oral argument by. *E. J. Neuenschwander,* both of Medford.

FAIRCHILD, J.   The existence of a legally sufficient offer by Mr. Lube to give to his servant all his property upon condition that she served until his death and performance by her for his benefit in acceptance of the offer must determine the questions raised on this appeal.

As will presently appear upon a recital of the evidence, Mr. Lube had experienced considerable difficulty in engaging and keeping a housekeeper.   For some reason it appears to have been impractical or impossible for him to live with members of his family.   He placed an advertisement in a newspaper.   This advertisement was seen by claimant, who wrote inquiring about the position.   In answer to her letters, Mr. Lube offered her the position, and on December 2, 1933, wrote:

"And I will care for a woman so long as she lives, if I should die before she, then she is to remain in the house so long as she lives, no one can drive her out.   I would give her this in writing so that she need not have doubts about it."

In another and undated letter he said:

"One does not know how long one may live and what may happen there are farmer women who gave everything to the young and they used it all up and now the state has to support the women.   I will keep mine as long as I live and no one can blame me for that."

Another letter contains the following:

"With me all that is mine is also yours and you will be happy after you have been with me a week and see how good you have it."

The trial court reached the conclusion that no contract had been made between the parties at the time she left Milwaukee for Colby on December 24, 1933. In this the court was doubtless correct. What had occurred up to this time was in the nature of preliminary negotiations. In the view we take of the matter, the negotiations continued until the second will, to be hereinafter referred to, was drawn, and at that time the terms under which the employment was to proceed became fixed and certain.

Because of lack of testimony of statements of Mr. Lube to the claimant, resulting from her inability to testify, it is impossible to say just when terms of the contract were definitely agreed upon between them, but the evidence requires findings that claimant was hired; that she was to be paid for her services. The mere expectation on her part that the contract would be entered into did not, of course, constitute a contract. Some expression of the terms agreed upon in writing was contemplated. He had assured her of something beyond mere wages. He said in his letter: "I would give her this in writing so that she need not have doubts about it." While it is impossible to fix the exact time when he finally settled on the amount of compensation to be paid, in addition to the $3 a week, if she remained until he died, there appears to be an abundance of evidence of deliberate assurance seriously made by Lube that he would give the claimant something over and above any current wages. When the employment began, the suggested reward was not sufficiently certain in its terms to disclose exactly what the promisor was undertaking to do. An offer is generally understood to be a statement by the offerer of what he will give in return for some act (or promise) of the offeree. As it necessarily looks to the future and must be promissory in terms, it must be sufficiently certain to enable the court to understand what is asked for and what consideration is

to mature the promise. The question now is, Are the requirements of a contract manifest?

Lube wanted to employ claimant at as little present cost as possible. He did not intend to make any transfer of his property or give any lien on it to anyone while he lived. He said so and gave practical reasons for his attitude. It is just as evident that he was seeking to induce claimant to enter and remain in his employ on terms agreeable to him by holding out to her the hope of further and substantial compensation or reward. The services were procured and proved to be satisfactory. In his acts and in his conversations with his neighbors and the claimant's son, he created unmistakeable evidence of entire satisfaction with the character of claimant's work and the general service she rendered. He had assured her of a written agreement that would insure her some additional compensation depending upon the continuousness of her service. As time passed, and no written agreement appeared, for some reason Lube became considerably exercised over the probable departure of the claimant from his home. He appealed to his neighbors to urge her to continue in his employ. He told them to tell her that she "should have everything that he leaves, furniture and everything in the house should be hers." He had a will drawn in which he devised to claimant about an acre of land, a dwelling and outbuildings, and bequeathed her $1,000. Just when the talks occurred about the claimant's leaving him or the sequence of them does not clearly appear, but after the drawing of the first will, he appears to have written to his daughter and, no timely answer being made, on October 24, 1934, he drew a second will, and in this will he gave all his property to the claimant on condition that she remain and care for him as long as he lived. Because the witnesses to this will did not sign in each other's presence, it was not admitted to probate. The court below concluded the "second

will" was drawn because his daughter failed to respond to his letter, and not in an attempted performance of an outstanding contract giving claimant all his property. One of Lube's complaints was that he could not get the help of his children. Two neighbors testified that Lube said his children would not take care of him, and that he therefore had to get a stranger, and a witness for the administratrix testified that Mr. Lube said that, if anyone would take care of him, that party would get all his property. There is evidence that he was convinced claimant was contemplating leaving. He had given assurance that he would put in writing a provision for her. He had written to her before she came to Colby a letter in which, among other things, he said: "With me all that is mine is also yours and you will be happy after you have been with me a week and see how good you have it." He drew the first will; then wrote to his daughter, who did not respond. We need not speculate upon the course of events that might have ensued had the daughter conferred with her father. The evidence, however, shows that he then drew the will which is now relied on by the claimant as evidence of the contract fixing the additional payment for the services she had rendered. The facts established are, then, employment, current wages of $3 a week, and a promise of a substantial amount of property if she continued to take care of him while he lived, which amount was, on the date of the second will, definitely fixed. There is nothing illusory where the promise is to give one additional compensation if certain services are rendered for a definite time. *Zwolanek v. Baker Mfg. Co.* 150 Wis. 517, 137 N. W. 769; *Estate of Sense,* 206 Wis. 89, 238 N. W. 811; *Estate of Getchell,* 211 Wis. 644, 247 N. W. 859; *Brackenbury v. Hodgkin,* 116 Me. 399, 102 Atl. 106; *Woods v. Dunn,* 81 Or. 457, 159 Pac. 1158. In *Estate of Sense, supra,* the court dealt with a set of facts somewhat similar to those in the case at bar. In the *Sense*

*Case* the claimant had entered into a contract to accept $100 per year for supporting his mother-in-law. In that case, as in this, there is nothing in the evidence that indicates that claimant could not have terminated the agreement at any time. Mrs. Sense, the mother-in-law, agreed to give claimant something in addition, and wrote her agent directing him at her death to pay a specific sum to the claimant, with whom she had lived and who had cared for and supported her. This was construed under the evidence in that case as an acknowledgment of indebtedness, supported by a consideration and valid as such to sustain a claim based thereon. In *Zwolanek v. Baker Mfg. Co., supra,* it was held that a by-law of an employer corporation which provided that any person who should have been in its regular employ for a certain time should thereupon begin to share in surplus earnings, provided he did not quit or was not discharged prior to January 1st of any year, amounted to an offer of a reward for constant and continuous service, and, if communicated to the employee and accepted by substantial compliance with the terms of the offer before its withdrawal, became a complete and valid contract. The rule was laid down that it was not essential in such a case that the employee should have informed the company that he relied upon the offer in continuing his work. Lube's great concern was over his care during the last years or months of his life. His letter to the daughter was unanswered by her; he redrew his will; showed the new will to claimant's son, and told him that, if claimant stayed, he would give her everything he had; he showed the will to the witness, and told him to tell his mother about it, and the witness testified that he told claimant everything that Lube asked him to tell her, and that she apparently already knew about it.

There is no question raised as to the performance by the claimant of the required service. Of course, there is no

showing that after the drawing of the second will she said to Mr. Lube: "The agreement as I understood it is now made into a contract and I accept your promise," but the evidence does show that she knew of the will and performed the conditions imposed. Whether his treatment of his children was fair, or what difficulties peculiar to himself caused him to be dependent on strangers in his last years, are considerations which are not before us. There is no evidence of lack of capacity on his part and no evidence of overreaching on claimant's part.

As to the validity of the agreement, the essentials required by the statute of frauds are present. To satisfy the calls of the statute of frauds, it is not necessary that a formal contract be set forth in writing. The agreement is not void unless there is a lack of "some note or memorandum thereof, expressing the consideration," subscribed by the party to be charged. Sec. 241.02, Stats. In *Singleton v. Hill,* 91 Wis. 51, 64 N. W. 588, it was held that a letter to a vendor from his agent, transmitting an offer for land, and his reply to the agent accepting such offer, constitute a sufficient memorandum of the contract for the sale of the land to satisfy the statute of frauds. That case quotes with approval, at page 53, from *Gibson v. Holland,* 1 L. R. C. P. 1:

"The object of the statute of frauds is to prevent perjury in the setting up of contracts by parol evidence. With this view, it requires the contract to be proved by the production of some note or memorandum in writing."

See *Washburn v. Fletcher,* 42 Wis. 152; *Campbell v. Thomas,* 42 Wis. 437; *Van Doren v. Roepke,* 107 Wis. 535, 83 N. W. 754; *Curtis L. & L. Co. v. Interior L. Co.* 137 Wis. 341, 118 N. W. 853.

In the case at bar, preliminary negotiations which always suggested additional substantial compensation as a reward for faithful and continuous service and were carried on for some time finally took shape in a writing, which provided

that which had been up to that time lacking, a definite statement of amount and consideration as required by the statute of frauds. This writing reads:

"I direct that Ida Stallman, who is at the present time my housekeeper, shall have all my property of every description, provided that she shall keep house for me and otherwise care for me during health or sickness so far as she is reasonably able in my home at the City of Colby, Clark County, Wisconsin, until my death."

It was signed by August Lube, the party to be charged, and, while not effective as a will, was evidence of a unilateral contract containing a promise which the evidence shows was fully and completely accepted by performance. It follows that claimant's claim to the residue of Lube's estate is valid and must be allowed.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment in favor of claimant, decreeing the assignment and transfer to her of the residue of the estate after the payment of expenses of administration and debts.