## OEDEKERK et al. v. MUNCIE GEAR WORKS, Inc.

No. 9917.

United States Court of Appeals
Seventh Circuit.

Feb. 16, 1950.

Walter D. White, John B. Beasley, Muncie, Ind. (White & Haymond, Muncie, Ind., of counsel), for appellant.

George P. Ryan, Alan T. Nolan, Indianapolis, Ind. (Ross, McCord, Ice & Miller, Indianapolis, Ind., of counsel), for appellee.

Before MAJOR, Chief Judge, and KERNER and DUFFY, Circuit Judges.

KERNER, Circuit Judge.

The issue in this case was simple. The basic facts are undisputed. Plaintiffs sued defendant to recover freight charges and for handling and packing costs in making two shipments of rocket tubes from California to Muncie, Indiana, and back to Pasadena, on the ground that defendant had breached a contract for the purchase of the tubes. That is, plaintiffs were forced to reship the tubes to their plant in California because defendant would not accept the shipments. No question was raised as to the freight costs on the shipments or the packing and crating costs in connection therewith. The ultimate question was whether plaintiffs had the right to ship the tubes as they did. The case was tried by the court, which made special findings of fact, pronounced its conclusions of law thereon, and rendered judgment in favor of plaintiffs. This judgment, defendant seeks to reverse.

On May 1, 1945, the parties entered into an oral agreement under the terms of which plaintiffs were to ship to defendant 10,000 rocket tubes, subject to inspection by a representative of the Navy Department at the place of manufacture before shipment, on the understanding that defendant would return a like number of tubes to plaintiffs at a later date, and that a value of $9 per tube would be set for billing purposes to serve as a basis for terminating a Navy contract under which defendant was manufacturing rocket tubes, if such termination occurred before the agreement was performed. Pursuant to the agreement, defendant on May 5 mailed to plaintiffs a purchase order which specified the terms of the May 1 agreement. This

purchase order was enclosed in a letter in which defendant stated: " * * * These tubes are to be returned to you * * * but if you see fit to just sell these tubes outright without replacement please let us know so we can cancel our raw tubing orders." In response, plaintiffs on May 10 wrote defendant a letter in which they stated: " * * * We would prefer to sell these to you outright without replacement, so you may cancel your raw tubing orders. * * *" May 12 defendant wired plaintiffs inquiring as to shipping date, amount, and routing of the first carload. On the same day plaintiffs advised defendant that the first shipment would be made on Monday, May 14, via Santa Fe, and inquired whether a sight draft was satisfactory, and defendant wired plaintiffs: " * * * sight draft satisfactory on carload shipment Monday * * *"

Plaintiffs shipped the first carload of 5,000 tubes under a sight draft for $45,000, and notified defendant to that effect. The telegram, however, did not mention the amount of the sight draft. May 16 defendant wrote a letter which was received by plaintiffs on May 21 approving an outright sale, but defendant objected to the $9 price, and said: " * * * I would like to purchase them at the price of $7.50 each which would include the box." May 17 plaintiffs shipped the second carload of tubes, and on May 18 wired defendant that the shipment had been made. May 25, after the first shipment of tubes had arrived in Muncie, Indiana, Harry Oedekerk called M. J. Haughey, defendant's production manager, over the long distance telephone, and they agreed to a sales price of $7.50 per tube and to the sight draft on the basis of that price. Later that day, however, Kenneth Spurgeon, defendant's president, called Oedekerk and objected to the sight draft at $7.50, on the ground that defendant would thereby be prevented from inspecting the tubes before payment. May 31, 1945, plaintiffs notified defendant that they had ordered the shipments returned, and the shipments were returned to plaintiffs.

The court found inter alia that on May 1, 1945, the parties made an oral agreement under the terms of which it was agreed that plaintiffs would ship to defendant 10,000 rocket motor tubes subject to inspection by a representative of the Navy Department at the place of shipment, and that defendant would return a like number of tubes to plaintiffs at a later date, and that a value of $9 per tube would be used for billing purposes; that in place of the original arrangement for the exchange of the rocket tubes, defendant, by the letter of May 5, offered to purchase the tubes at $9 each, subject to inspection by a representative of the Navy Department at the place of manufacture before shipment, and that plaintiffs, on May 10, accepted defendant's offer. It also found that the tubes included in the shipments had been inspected and approved by the Navy Department before they were shipped.

The determinative issue is whether the parties entered into an enforceable contract of sale.

Before we discuss defendant's contentions, we think we ought to dispose of an incidental question raised by defendant. It calls attention to the fact that the tubes were submitted to defendant subject to the payment of the sight drafts, and makes the point that the judgment must be reversed because the trial judge made no finding that defendant agreed to accept the shipments subject to sight drafts. Even so, the test as to the adequacy of findings is whether they are sufficiently comprehensive and pertinent to the issues. The court need only find such ultimate facts as are necessary to reach the decision. Schilling v. Schwitzer-Cummins Co., 79 U.S. App.D.C. 20, 142 F.2d 82, 84, and Shapiro v. Rubens, 7 Cir., 166 F.2d 659. Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A., does not require a trial judge to make findings on all the facts presented; if the findings are sufficient to support the ultimate conclusion of the court, they are sufficient. Here, defendant did not refuse to accept the tubes because of the sight drafts; rather its refusal was solely on the ground that to honor the drafts would prevent defendant from inspecting the tubes before payment of the drafts. In this situation, a finding as to whether or not defendant had agreed

to accept the shipments subject to sight drafts was not an ultimate issue in the case.

Defendant's principal contention is that the judgment was based upon an erroneous finding of fact, and that the findings are not supported by the evidence. It makes the point that price is an essential element of a contract, and argues that the contract sued on is void for want of a definite agreement fixing the price of the tubes.

█ We are authorized to reverse a judgment only if the findings of fact were clearly erroneous, or the law was incorrectly applied, Shapiro v. Rubens, 166 F.2d 666. A finding is not clearly erroneous if there is substantial evidence to support it, Fox River Paper Corporation v. United States, 7 Cir., 165 F.2d 639.

█ Concededly, a contract must be definite so that performances to be rendered under it, by either party, are reasonably certain. In our case, it is undisputed that in connection with the purchase order for the tubes, defendant sent to plaintiffs a letter in which it said: " * * * if you see fit to just sell these tubes outright without replacement please let us know so we can cancel our raw tubing orders." And that after plaintiffs, on May 10, had advised defendant to cancel its raw tubing orders, defendant informed plaintiffs that a sight draft was satisfactory, and inquired of plaintiffs as to the shipping date, amount, and routing of the first carload of tubes. In such a situation, there being no evidence to indicate a contrary intention, all the instruments executed in the course of the transaction will be read together, Maier v. Continental Oil Co., 7 Cir., 120 F.2d 237, 240. And when so considered with all the evidence concerning the entire transaction, the letter of May 5 was a definite offer to buy the tubes at $9.00 per tube. True, an offer must be sufficiently certain to enable a court to understand what is asked for, and what consideration is to mature the promise, In re Estate of Lube (Stallman v. Gosse), 225 Wis. 365, 274 N.W. 276. But when defendant, after plaintiffs on May 10 had advised defendant to cancel its raw tubing orders, informed plaintiffs that a sight draft was satisfactory, a contract was created, the terms became fixed and certain, and plaintiffs were bound to sell and defendant to buy the tubes. In re Lube, supra. In this view, whatever occurred thereafter was immaterial in the decision of this case.

Under these circumstances, we think plaintiffs had the right to ship the tubes. We cannot say that the trial judge incorrectly applied the law, or that the findings of fact were clearly erroneous.

█ Another contention is that the contract was unenforceable under the statute of frauds. See Burns Indiana Stat.Ann. § 58-104.

A quick answer to this contention is to say that nowhere in its answer has defendant pleaded the statute as a defense, nor did it raise such a defense in its statement of points. Rule 8(c), F.R.C.P. specifically provides that, "In pleading to a preceding pleading, a party shall set forth affirmatively * * * statute of frauds * * *." The statute of frauds is an affirmative defense, and must be pleaded. Since it has not been pleaded, it is waived under Rule 12(b). It is too late now to assert such a defense.

The judgment of the District Court is affirmed.