GENAME, Appellant, v. BENSON, Respondent.*

*October 2—October 31, 1967.*

. * Motion for rehearing denied, with costs, on December 22, 1967.

For the appellant there were briefs and oral argument by *Donald MacKay* of Sister Bay.

For the respondent there was a brief by *Stephan & Kirkegaard* of Sturgeon Bay, and oral argument by *Edwin C. Stephan.*

WILKIE, J.

### *Contract to Make a Will.*

The first issue raised on this appeal is whether or not there was a contract to make a will.

On November 7, 1963, the defendant, in his own hand, captioned a sheet of paper "Last Will and Testament" and wrote in part:

"*2nd* I hereby will and bequeth [sic] to my good friend and neighbor Susan E. Geneme if [she] survives [me] the house and land as it stands with all of the household furnishings and equipment including my automobile, to be hers absolutely.

"I do this in appreciation of the kindness and care that she has shown me."

Plaintiff contends that this writing, though ineffective as a will due to want of execution, is a memorandum of an agreement between the parties to make a will. In other words, the plaintiff contends that this writing is a promise by the defendant to make a will which leaves his home, household furnishings, and automobile to the plaintiff. This document is not a contract. There are no words of promise.[1] It is nothing more than an ineffective testamentary disposition. Four days later, on November 11, 1963, the defendant did in fact draft and execute a will in substantial conformity with the writ-

[1] Plaintiff relies on *Estate of Lube* (1937), 225 Wis. 365, 274 N. W. 276, but in that case the evidence established that there were preliminary negotiations between the parties and that there was an actual promise to make a will, which promise was then accepted by performance.

ing. This will would have operated to pass the property to the plaintiff if the defendant had died while it was still effective. Therefore, even if the writing is construed as a promise, the defendant has fully performed. It is only contended that the defendant promised to make a will, not that he promised to make an irrevocable will.

*Estate of Hoeppner* [2] and *Estate of Rogers*,[3] cited by the plaintiff, are not in point. They were specific-performance actions wherein a party to a contract that called for the making of separate wills (which were mutual and reciprocal) had changed his will subsequent to the death of the other party. Here, we are not dealing with a joint-and-mutual-will situation and, even if we were, no will could pass any property in our situation because the testator is very much alive. Under the circumstances defendant's property was not impressed with a trust and the first part of the plaintiff's complaint is without merit.

### Quantum Meruit.

The second issue raised on this appeal is whether the plaintiff is entitled to a recovery on *quantum meruit* for any part, or all of the period from November 11, 1963, to April 1, 1966.

The plaintiff claims to have worked for the defendant the following number of hours during this period (though she kept no supporting records) :

8 hours a day from January 1, 1963, to May 30, 1965;

6 hours a day from June 1, 1965, to December of 1965;

4 hours a day from December of 1965 until April 1, 1966.

---

[2] (1966), 32 Wis. 2d 339, 145 N. W. 2d 754.
[3] (1966), 30 Wis. 2d 284, 140 N. W. 2d 273.

Although plaintiff did state that in her opinion the reasonable value of her services was $2.50 an hour, nothing in the record points to the acceptance of this figure by the defendant, or establishes that this was the value of similar services in that area. It is not against the great weight and clear preponderance of the evidence for the trial court to find that:

"It would be just pure guess work from the present record to establish how many hours the plaintiff had worked for the defendant and just what she would be entitled to per hour for her work."

Unquestionably, the plaintiff did render services to the defendant. The circumstances and the relationship of the parties are such that these services were not rendered gratuitously. Therefore, the general rule of a presumption of compensation is applicable. As stated in *Estate of Voss* [4]

". . . in general if one accepts service from another which is valuable to him the presumption of fact arises that a compensation equivalent is to pass between the parties."

Historically, *quantum meruit* was a common count in the action of *assumpsit*. Recovery in *quantum meruit* is allowed for services performed for another on the basis of a contract implied in law to pay the performer for what the services were reasonably worth. [5]

However, before recovery can be permitted on *quantum meruit* there must be sufficient competent evidence in the record which shows that the services were performed at the instance of the person to be charged and that the performer expected reasonable compensation. [6] There can be no recovery in *quantum meruit* when a claimant has in fact already been compensated. Though the plaintiff in

---

[4] (1963), 20 Wis. 2d 238, 242, 121 N. W. 2d 744.

[5] *Mead v. Ringling* (1954), 266 Wis. 523, 528, 64 N. W. 2d 222, 65 N. W. 2d 35.

[6] *Estate of Voss, supra,* footnote 4, at page 241.

this case did perform her services at the initial request of the defendant and it is reasonably inferred that she intended to be compensated for her services, she has failed to establish a cause of action in *quantum meruit*. Her failure lies in the fact that she has already been justly compensated.

It is true that reimbursement for expenses is not compensation.[7] However, the evidence leads to the inescapable conclusion that Mrs. Gename was fully compensated, over and above any expenses, for her services to the defendant. It is undisputed that the plaintiff received $15 a week during the beginning of her relationship with the defendant and that this amount eventually mushroomed to $160 a month. Plaintiff testified that Benson was paying her "$90.00 or $125.00" a month during all of 1964, although she "couldn't be sure." Plaintiff claims that all of this money was devoted to the exclusive purpose of feeding the defendant and buying a few minor household supplies. Yet, she testified that Benson's money was also used to feed her and Mr. Gename. It is hard to imagine how an eighty-two-year-old man could run up a $160-monthly-food bill. Her admission that she used the money to feed Mr. Gename and herself establishes beyond any question that Benson's monthly payments far exceeded the cost of his meals.

The plaintiff also received other compensation. She testified that she gave the defendant three or four sponge baths each week for which she was paid $5 per bath.

Plaintiff has fallen far short of rebutting the presumption that such periodic payments are in full for all services rendered.[8]

The plaintiff also received several other payments and items of property from the defendant, among which were:

[7] *Geyso v. Cudahy* (1967), 34 Wis. 2d 476, 149 N. W. 2d 611.

[8] *Estate of Breitzman* (1940), 236 Wis. 96, 294 N. W. 489.

(a) Two diamond rings valued at $600;
(b) $600, which the plaintiff used as a payment on an organ that she had purchased;
(c) $700, which the defendant gave plaintiff to apply toward the purchase of a mink coat (Mrs. Gename never bought the coat but she did spend the money);
(d) a check for $500; and
(e) an automobile.

The trial court did not determine whether these transactions were gifts or constituted additional compensation for services rendered. It is unnecessary for this court to make a determination since the regular payments were sufficient compensation for her services.

Our conclusion is that there is no evidence which, by the most favorable consideration that could legitimately be given to it, would warrant a judgment in favor of the plaintiff.

*By the Court.*—Judgment and orders affirmed.

---

\* Motion for rehearing denied, without costs, on December 29, 1967.