IN MATTER OF ESTATE OF LADE, Deceased: JORGENSEN, Personal Representative of Estate of Oscar F. Lade, Deceased, Respondent and Cross-Appellant, v. KETTER, Appellant and Cross-Respondent.

*No. 75–305. Submitted on briefs November 2, 1977.—Decided January 3, 1978.*
(Also reported in 260 N.W.2d 665.)

For the appellant and cross-respondent the cause was submitted on the briefs of *Arthur W. Guenther, Jr.,* of Campbellsport.

For the respondent and cross-appellant the cause was submitted on the brief of *Tonjes & Mortensen* of Fond du Lac.

PER CURIAM. The property in question is a farm in Fond du Lac county which was owned by Oscar F. Lade, an elderly man who died intestate on December 22, 1973.

Elwyn Ketter, who owned a farm adjacent to Lade's, was a good friend of the deceased. He had worked part of the Lade farm on a shares basis beginning in 1963, and in 1966 or 1967 became a renter under an oral lease. He was renting twenty-one and one-half acres of Lade's farm at the time of Lade's death.

When Lade died, Ketter filed a claim with the estate for various improvements and services rendered to Lade, for breach of the oral lease for 1974, and for breach of an oral contract by which Lade allegedly agreed to convey his farm to Ketter for $8,000. The trial court found that there was no contract to convey, but rather an option to purchase land and that it was barred by the statute of frauds.

Although trial court findings must be sustained unless contrary to the great weight and clear preponderance of the evidence, it is apparent that the trial court was

in error. We conclude that there was a contract to convey but that it was nevertheless barred by the statute of frauds.

When one purchases an option, one obtains the potentiality of conveyance. That was not the case here. The evidence demonstrates that a bargain had been made: Lade offered to sell for $8,000 and Ketter agreed to pay.

This agreement was first reached at a meeting between Lade and Ketter several years prior to Lade's death. Members of the Ketter family were witnesses and testified that Ketter was to pay $8,000 for the farm but that Lade refused to accept any money until after January 1, 1974 because of tax or social security reasons. The existence and terms of the contract are reinforced by the testimony of several other persons, two of whom had attempted to buy the property and were told by Lade that he had sold the property to Elwyn Ketter. However, no written agreement was ever drawn up.

The statute of frauds concerning real estate transactions, sec. 706.02, basically requires that such transactions be evidenced by a conveyance. Sec. 706.01(3), defines a "conveyance" as a written instrument. For a real estate transaction not evidenced by a conveyance to be enforceable, sec. 706.04 requires (1) that the elements of the contract be clearly and satisfactorily proved, and (2) that it fall within one of the exceptions to the statute of frauds enumerated therein. We need not concern ourselves with whether the evidence presented shows the elements of the contract by clear and satisfactory proof because it is apparent that even if proved the contract does not fall within one of the exceptions to the statute of frauds.

Ketter claims that the statutory bar should be lifted because this case falls within the exceptions for unjust enrichment and equitable estoppel.

The unjust enrichment theory is based on sec. 706.04 (2), Stats., which states that performance may be ordered if the party against whom enforcement is sought would be unjustly enriched if enforcement is denied.

Ketter's argument is that because the estate sold the property to a third party for $29,500, it has been unjustly enriched to the amount of $21,500, the contract price market price difference. This is not unjust enrichment. For unjust enrichment to apply, the estate of Oscar Lade would have to have received valuable consideration from Ketter: Down payments, full payment, or substantial improvements to the farm. Under unjust enrichment a person is seeking the return of money actually expended; there must be a benefit conferred upon the defendant by the plaintiff. *Arjay Investment Co. v. Kohlmetz,* 9 Wis.2d 535, 538, 101 N.W. 2d 700 (1960); *Don Ganser & Associates, Inc. v. MHI, Inc.,* 31 Wis.2d 212, 216, 142 N.W.2d 781 (1966). Here, Ketter has made no such expenditures or conferred any benefits.

The second exception which Ketter claims is the doctrine of equitable estoppel set forth in sec. 706.04(3) (b), Stats. This section, which closely reflects the doctrine of part performance, will estop a person from asserting the statute of frauds when the person claiming estoppel has changed his position to his substantial detriment, under circumstances in which the detriment incurred cannot be recovered but by specific performance, and where the detriment was incurred with the prior knowing consent or approval of the party sought to be estopped.

Ketter's case for equitable estoppel-part performance is based on personal services to Lade and on improvements made on Lade's farm. Also raised is a claim that he refrained from buying other farmland in reliance on the oral agreement. In examining acts alleged to constitute part performance, only those acts performed after creation of the oral contract may be considered, and only those acts must be solely and obviously referable to the contract. *Bunbury v. Krauss,* 41 Wis.2d 522, 534, 164 N.W.2d 473 (1969) ; *Marshall & Ilsley Bank v. Schuerbrock,* 195 Wis. 203, 210, 217 N.W. 416 (1928). Moreover, the facts alleged to remove the bar of the statute of frauds must be clearly and satisfactorily proved. *Marshall & Ilsley Bank,* 195 Wis. at 211.

Under these standards all improvements and services made or performed before the contract must be disregarded. The claim that Ketter would have bought other farmland may also be dismissed because it is not supported by clear and satisfactory proof.

Ketter contends that *Estate of Powell,* 206 Wis. 513, 240 N.W. 122 (1932), presents a situation closely analogous to this one. It does not. The *Powell* court characterized the acts of the successful claimants as going beyond the requirements of ordinary tenancy and husbandry. Ketter's improvements do not meet this test.

The evidence of improvements shows that after the contract, although not necessarily because of it, Ketter increased the tillable acreage by four acres. This indicates no special regard for the property. Prior to the contract Ketter had cleared 17 acres. He was merely continuing the expansion of his acreage and paying rent for the expansion which he had begun as a tenant in 1963.

In *Powell, supra,* the court found that the claimants would have left the property if the oral contract had not been tendered. There is nothing here which would

suggest that Ketter would not have continued farming and expanding his acreage as a tenant without the oral contract.

Ketter's other improvements include repairing a culvert, adding gravel to a road, fixing fences to keep cattle out of his corn, and minor building repairs. The record does not demonstrate that these improvements were made after the oral contract was agreed upon. Therefore they should be disregarded. Even if they were made after the contract, they are not so beyond the requirements of normal husbandry or tenancy as to indicate reliance on the contract. This is also true of Ketter's fertilization of the land.

Much of the alleged part performance consists of services to Lade. Personal services to a vendor in reliance upon an oral agreement are not enough, standing alone, to constitute part performance. *Rodman v. Rodman,* 112 Wis. 378, 384, 88 N.W. 218 (1901) ; *Estate of Rogers,* 30 Wis.2d 284, 288, 140 N.W.2d 273 (1966). Because Ketter made no substantial improvements which can be attributed to the oral contract, these services are not a basis for part performance.

Even if there were valuable improvements to consider along with the services, the record does not demonstrate that the services performed after the contract was agreed upon were pursuant to the contract. At one point Ketter said that the services were part of the deal. At another point he stated that the services were done as a favor and specifically denied that they were part of the agreement. It is clear that the same services performed prior to any agreement were gratuitous.

In sum, there is no clear and satisfactory proof of part performance. Ketter has not changed his position

to his substantial detriment such that the estate is estopped from pleading the statute of frauds.

Although the trial court correctly refused to enforce the oral contract, it awarded the following as damages for breach of the oral lease for 1974 and in *quantum meruit* for services rendered:

| | |
|---|---|
| "Spreading fertilizer | $ 42.00 |
| "Fixing fences | 175.00 |
| "Install culvert | 75.00 |
| "Mowing lawn | 100.00 |
| "Delivering mail, water, trips and miscellaneous care over the years | 425.00 |
| "Damages for Breach of Land Rental | 2,000.00 |
| "Total | $2,817.00" |

The estate challenges the award for breach of the 1974 lease and spreading fertilizer in relience on it on the basis that there is no proof that the lease ever existed. The existence of the lease may be presumed by the fact that Ketter plowed and fertilized thirteen and one-half acres in the fall of 1973 in anticipation of spring planting. The trial court finding of a lease is not contrary to the great weight and clear preponderance of the evidence. The facts show circumstances which permit an inference of a lease for 1974. *Town of Menominee v. Skubitz,* 53 Wis.2d 430, 435–36, 192 N.W.2d 887 (1972).

The trial court also allowed recovery for services and improvements on the basis of *quantum meruit.*

"Recovery in *quantum meruit* is allowed for services performed for another on the basis of a contract implied in law to pay the performer for what the services were reasonably worth.

"However, before recovery can be permitted on *quantum meruit* there must be sufficient competent evidence

in the record which shows that the services were performed at the instance of the person to be charged and that the performer expected reasonable compensation." *Gename v. Benson,* 36 Wis.2d 370, 376, 153 N.W.2d 571 (1967).

As noted above, the services and improvements performed prior to the oral contract were gratuitous. Only after the invalid agreement did a possibility of compensation enter the picture. Therefore only those services and improvements made or performed after the contract can properly give rise to recovery under *quantum meruit.*

Although the evidence is unclear, the awards are not contrary to the great weight and clear preponderance of the evidence; it is apparent that the awards reflect services and improvements subsequent to the oral agreement. The record shows that Ketter demanded compensation, *inter alia,* for mowing Lade's lawn for five years at $25 per year or $125 total. The trial court noted that Ketter claimed that the oral agreement took place four years before Lade's death, and accordingly reduced the mowing claim to $100 to reflect only those four years. Other claims which covered more than four years were similarly reduced.

The trial court correctly restricted recovery in *quantum meruit* to only those claims which arose after the oral contract.

*By the Court.*—Judgment affirmed.