**FARNSWORTH, McKOANE & CO., an Illinois Corporation, Plaintiff,**

v.

**NORTH SHORE SAVINGS & LOAN ASSOCIATION, a Wisconsin Corporation, Defendant.**

**Civ. A. No. 78–C–845.**

United States District Court, E. D. Wisconsin.

Jan. 5, 1981.

---

David A. Saichek, Milwaukee, Wis., for plaintiff.

Clay R. Williams, Gregory G. Wille, and Joseph A. Ranney, Milwaukee, Wis., for defendant.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This is an action for damages brought pursuant to 28 U.S.C. § 1332. The plaintiff Farnsworth, McKoane & Co. ("Farnsworth") is an Illinois corporation involved in the business of real estate consulting, management, sales and development. The defendant North Shore Savings and Loan Association ("North Shore") is a Wisconsin savings and loan association. In Count I of the complaint the plaintiff seeks $1,640,000 in damages for breach by the defendant of an alleged contract between the parties for the provision of consulting services by the plaintiff to the defendant regarding the acquisition and development of a real estate site in Brookfield, Wisconsin, for the location of a commercial office building. Plaintiff's alleged duties under the contract are described in paragraph 4 of the complaint and the sums to which it claims entitlement are set forth in paragraph 5. Count II of the complaint has previously been dismissed. In Count III plaintiff seeks recovery in the alternative in quantum meruit for services performed by it with the knowledge of and for the benefit of the defendant.

North Shore has moved for summary judgment on Counts I and III of the complaint. For the following reasons the motion will be granted.

Count I is a claim for breach of contract. There is no dispute that from February 1977 through July 1977 the plaintiff and the defendant maintained an ongoing relationship of some sort; that defendant consulted plaintiff about the possibility of plaintiff's representing the defendant as an agent for the purpose of acquiring a parcel of property in Brookfield, Wisconsin, for the location of a commercial office building and possibly a strip shopping center; that the parties also discussed the possibility of the plaintiff's providing services regarding the development and subsequent management of the parcel; that the plaintiff did in fact obtain a right of first refusal for the defendant on a parcel of property (the Woods property); but that some time shortly before, or just after, the option expired the defendant commenced negotiations with the seller directly, acquired the property, and terminated its relations with the plaintiff. The parties vigorously dispute whether or not they ever entered into a contract. North Shore contends that all negotiations between the parties were preliminary only, that any services which Farnsworth did perform were performed without expectation of present gain but rather in the hope that they would induce North Shore to enter into a more lucrative long-term arrangement, and that in any event if the parties are found to have entered into an oral contract, plaintiff's recovery is barred by §§ 706.02 and 240.10, Wis.Stats., which require respectively that transactions by which interests in land are created and real estate brokerage contracts be in writing. As to Count I of the complaint, I find, based upon the deposition testimony of the plaintiff's own witnesses, that no genuine issue of material fact exists and that no contract was created between the parties.

Wisconsin law requires that even an implied contract must arise under circumstances showing a mutual intent to contract and a meeting of the minds of the parties to the contract on the material terms of the contract. *Kramer v. City of Hayward*, 57 Wis.2d 302, 307, 203 N.W.2d

871 (1973). In addition, "[a]n offer must be so definite in its terms, or require such definite terms in the acceptance, that the promises and performances to be rendered by each party are reasonably certain." *Goebel v. National Exchangors, Inc.*, 88 Wis.2d 596, 615, 277 N.W.2d 755 (1978), quoting from the Restatement, 1 Contracts, p. 40, sec. 32. Price is an essential element of a contract and thus the agreement must be definite as to compensation, *Goebel*, supra, at 615, 277 N.W.2d 755, and consequently an agreement which relies upon the "honor and good faith" of the parties, on the one hand to perform services and on the other to provide a reasonable return for the services, is not binding. *Shetney v. Shetney*, 49 Wis.2d 26, 38–39, 181 N.W.2d 516 (1970).

In this case Colin Regan, Farnsworth's vice-president in Wisconsin who was primarily responsible from February 1977 through July 1977 for conducting negotiations with North Shore and promoting the creation of a contract between the parties, testified during his deposition to meetings with North Shore officials on February 15, 1977 (dep. at 52–55, 69–70); February 25, 1977 (dep. at 99, 116–117); March 3, 1977 (dep. at 119–121); March 24, 1977 (dep. at 121–122); various meetings in April and May 1977 (dep. at 123–128, 128–132, 132–133, and 133–134); and a final meeting on June 17, 1977, which Woods, the seller, also attended (dep. at 134–137). Mr. Regan testified that at the end of that meeting:

"Q.    * * * here again the relationship between North Shore and Farnsworth was not clarified at all during that meeting, was it? This was again a preliminary negotiating session with Mr. Woods [the seller] in attendance at this time?

"A.    Correct.

                *    *    *    *    *    *

"Q.    So at least still at the end of that meeting on June 17, at least as far as you and Farnsworth were concerned, it still remained to be developed?

"A.    Correct.

"Q.    Whether you were going to be a developer or a manager or broker or precisely what your role was going to be, right?

"A.    Correct."

        [Dep. at 136.]

Mr. Regan further testified that the president of North Shore subsequently asked Farnsworth for a firm proposal as to its view of what the future relationship of the parties would be, that Farnsworth did draw up such a proposal (referred to as the "July 11 letter of intent") and sent it to North Shore, and that North Shore did not act on the proposal but instead commenced direct negotiations with the seller. (Dep. at 137–140.) The parties are in disagreement as to whether their relationship was finally terminated in the summer of 1977, later in the year, or in early 1978, but there is no dispute that the plaintiff did not undertake any activity on defendant's behalf after July 1977 and that no further discussions as to terms of a continuing relationship occurred between the parties. Mr. Regan also testified that in his opinion the parties did enter into a contract for the development of the site, but "[t]here was nothing in written form. It was something that we were developing on a continuing basis." (Dep. at 150.) Mr. Regan's affidavit filed November 12, 1980, is no more specific as to the exact terms of the relationship agreed upon between the parties or the specific obligations of each side, nor does he state that any agreement as to compensation was arrived at.

In contrast, the affidavit of North Shore's president, Mr. McKenna, filed October 8, 1980, states unequivocally that through June 17, 1977, North Shore never received a definite proposal from Farnsworth as to the respective rights and obligations of the parties in connection with the acquisition and development of the Brookfield property (¶ 10); that on June 17, 1977, Mr. McKenna requested a firm written proposal from the plaintiff (¶ 11); that the only proposal subsequently submitted was the July 11 letter of intent to Woods, the seller of the property, for an extension of

the option to purchase (¶ 12); that the letter of intent, a copy of which is attached as Exhibit C to the McKenna affidavit, did not contain a statement of terms of compensation to the plaintiff for its services to North Shore; and that the letter was unacceptable to North Shore (¶ 13). It is not disputed that North Shore did not forward the letter to Mr. Woods and that it subsequently dealt with Mr. Woods directly and entered into no written agreement with the plaintiff.

■ The deposition of Mr. Philip Mappa, another of plaintiff's vice-presidents, who was to be primarily responsible on plaintiff's behalf for the financial arrangements of any mutual project undertaken by the plaintiff and North Shore, also reveals no specificity as to the terms and conditions of any agreement with North Shore. Mr. Mappa testified to certain preliminary negotiations with North Shore in February and March 1977 and to some discussion between the parties as to the type of fee arrangement which Farnsworth would typically expect in the case of a real estate development contract. (Dep. of 2/20/79–2/21/79 at 18, 24, 28, and 35–36; dep. of 2/28/79 at 23–24, 25–29, 33–37, and 44.) He was not able to state, however, the precise terms of any agreement arrived at between the parties. He did testify that the July 11 letter of intent was the most specific statement of terms arrived at between the parties, but acknowledged that "[w]e did not set out specific dollars and cents at this point." (Dep. of 2/28/79 at 42.)

> " 'It is evident that courts can neither specifically enforce agreements nor award substantial damages for their breach when they are wanting in certainty. Damages cannot be measured for the breach of an obligation when the nature and extent of the obligation are unknown, being neither certain nor capable of being made certain.' " *Witt v. Realist, Inc.*, 18 Wis.2d 282, 297, 118 N.W.2d 85 (1962), quoting from 12 Am.Jur.Contracts § 64 at p. 555.

The plaintiff argues that it did perform substantial services for the defendant, that the parties did reach agreement essentially on the terms as described in the July 11 letter of intent, and that the defendant cannot obtain summary judgment by filing an affidavit which states that it never intended to agree to the terms as set down in writing by the plaintiff. On review of all of the deposition transcripts, affidavits, and exhibits in the record, however, there is nothing aside from the complaint which sets forth with any degree of certainty the terms of an agreement allegedly arrived at between the parties. The plaintiff cannot rely on the allegations contained in its complaint to create an issue of fact in opposing the defendant's documented motion for summary judgment, the materials submitted in support of which show that no agreement as to terms was reached, and therefore the defendant's motion will be granted as to Count I of the complaint.

■ As to Count III, in which plaintiff seeks recovery in quantum meruit for services actually performed, the plaintiff alleges that, at a minimum, it undertook to perform preliminary services for the defendant with regard to the acquisition and development of an office site in Brookfield, that it did perform certain services for which it expected and is entitled to compensation, that the services were performed with the defendant's acquiescence, and that in view of the defendant's subsequent acquisition of the property the services were of substantial benefit to the defendant and plaintiff is therefore entitled to compensation for them to prevent unjust enrichment of the defendant.

> " 'Recovery in *quantum meruit* is allowed for services performed for another on the basis of a contract implied in law to pay the performer for what the services were reasonably worth.' " *In Matter of Estate of Lade*, 82 Wis.2d 80, 88, 260 N.W.2d 665 (1978), quoting from *Gename v. Benson*, 36 Wis.2d 370, 376, 153 N.W.2d 571 (1967).

See also *Puttkammer v. Minth*, 83 Wis.2d 686, 689, 266 N.W.2d 361 (1978), stating that the elements of a claim for unjust enrichment are "(1) a benefit conferred upon the

defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under circumstances making it inequitable for the defendant to retain the benefit without payment of its value."

Farnsworth holds itself out as having expertise as a real estate broker, leasing agent, property manager, and developer, including general contractor. (Regan dep. at 64.) North Shore's president James McKenna in his affidavit filed October 8, 1980, states that he contacted Farnsworth's vice-president Colin Regan in February 1977 to discuss possible sites for a building in Brookfield and the Brookfield leasing market (¶ 1); that Regan and Mappa subsequently made a presentation to North Shore of the services Farnsworth could provide in addition to the simple acquisition of real estate (¶s 3–5); and that North Shore did subsequently authorize Farnsworth to act as its agent in trying to acquire the Woods property (¶ 5). Mr. McKenna also stated:

"* * * There was no discussion of a fee or commission to be paid Farnsworth for its services in dealing with Mr. Woods on North Shore's behalf. It was my understanding that Farnsowrth [sic] had volunteered to provide that service while it continued to explore with North Shore the possibility of putting together a deal for the acquisition and development of the Woods property by North Shore from which, if concluded, Farnsworth hoped to benefit thereafter by contracting with North Shore for development consulting services as well as leasing and management services for the finished project." (McKenna affidavit ¶ 5.)

Mr. Regan and Mr. Mappa, by comparison, have stated under oath that Farnsworth from the outset expected compensation for any services which it performed and that North Shore was aware of that expectation and agreed to it. (Regan affidavit filed November 12, 1980, ¶s 6 and 9; Regan dep. at 52–55; Mappa dep. of 2/20/79–2/21/79 at 35; Mappa dep. of 2/28/79 at 25–29.) Mr. Regan also testified during his deposition that plaintiff did perform factfinding

functions for North Shore regarding site suitability (dep. at 71–72 and 128–132); there is no dispute that officials of the parties did hold a series of meetings in the spring of 1977 regarding defendant's proposed acquisition and development of a Brookfield site; and there is no dispute that plaintiff acted as North Shore's agent in acquiring a right of first refusal on the Woods property (McKenna affidavit ¶ 5; Regan affidavit ¶s 6 and 10; Regan dep. at 142–143).

■ To the extent that the services plaintiff performed for the defendant involved the acquisition of property, recovery in quantum meruit for those services is barred by the statute of frauds. Section 240.10(1), Wis.Stats., provides in part:

"(1) Every contract to pay a commission to a real estate agent or broker or to any other person for * * * buying real estate shall be void unless such contract * * * be in writing * * *."

In *Hale v. Kreisel*, 194 Wis. 271, 273–274, 215 N.W. 227 (1927), the Wisconsin Supreme court held that § 240.10 bars recovery except pursuant to a written contract for services rendered in the sale or acquisition of real estate:

"* * * [T]he rule permitting recovery on *quantum meruit* for services rendered under contracts void under the statute of frauds does not warrant a recovery upon *quantum meruit* for commissions which measure the reasonable value of the services performed in buying and selling real estate. * * *. These statutes leave no opportunity for the law to imply a contract. They apply to implied agreements as well as to those that are express. "* * * *

"It is the duty of the court to give effect to the legislative intent as expressed in the statute. That intent is so clearly expressed that no rule of construction and no precedent or prior judicial decision should be held sufficiently potent to lead to a construction of this statute which does not give effect to the plain legislative intent."

See also *Otto v. Black Eagle Oil Company,* 266 Wis. 215, 217–218, 63 N.W.2d 47 (1954). Therefore, even though the parties never specifically agreed that compensation would be made by way of a percentage commission on the purchase price (Regan affidavit ¶ 6; McKenna affidavit ¶ 5), plaintiff may not recover for its services in obtaining the Woods property for defendant, even assuming that those services were of value to the defendant.

The question which remains is whether the plaintiff performed any services for the defendant aside from services relating to site acquisition for which recovery is not barred by the statute of frauds and for which the plaintiff is entitled to compensation. The plaintiff contends that it did. (Regan affidavit ¶ 16; Mappa dep. of 2/20/79–2/21/79 at 69–70.) Defendant denies it. The court must determine whether this question raises an issue of material fact for trial or whether it can be said as a matter of law on the basis of facts in the record which are undisputed that the plaintiff is entitled to no recovery.

As previously stated, before the plaintiff can recover it must prove that it performed services which were of benefit to the defendant pursuant to an implied agreement with the defendant to compensate plaintiff for those services. As to the latter element there is a material factual dispute since the plaintiff states unequivocally that from the outset it expected compensation for all of its services rendered and defendant agreed. (Regan affidavit ¶ 6.) As to the former, however, having reviewed the entire record, I am satisfied that there is no material factual dispute and that the plaintiff did not confer any benefit upon the defendant, aside from its services for which recovery is barred by the statute of frauds, for which it is entitled to compensation from the defendant.

Mr. Mappa and Mr. Regan both testified during their depositions that a prerequisite to defendant's owing any form of compensation to plaintiff was defendant's acquisition of the Woods property. (Regan dep. at 151; Mappa dep. of 2/20/79–2/21/79 at 79.)

Mr. Mappa also testified that except for the right of first refusal entered into with Woods and the preparation of the July 11 letter of intent, the only contract ever consummated by the plaintiff on behalf of the defendant was for the initial soil testing analysis of the property (dep. of 2/20/79–2/21/79 at 55), and Mr. Regan testified that the plaintiff was never billed by the engineer for that analysis (dep. at 56 and 59). Mr. Regan also testified that when the plaintiff did finally seek compensation for services rendered in June 1978 from the defendant following defendant's acquisition of the Woods property, the plaintiff based its claim upon its "brokerage agreement" with North Shore (dep. at 143). The letter of demand actually stated:

"I would appreciate it if you would send me a letter that would state the total purchase price that your firm paid for the 15 acre parcel on the northwest corner of Moorland and Bluemound Roads in Brookfield, Wisconsin. We, in turn, will send you a commission statement based upon six (6) percent of the total sale price for acting as your agent in the purchase of this property, * * *.

"If you elect to have Farnsworth, McKoane & Co. participate with North Shore as a joint venture partner in the development of the site, this commission would be credited to North Shore and made part of the financial arrangements of the joint venture agreement." (Exhibit E to McKenna affidavit.)

See also McKenna's affidavit at paragraph 15, stating that on July 13, 1978, Regan called him and asked for a copy of the sales contract between North Shore and Woods so that plaintiff could compute its commission.

Regan on behalf of Farnsworth now argues that Farnsworth had more than a brokerage agreement with North Shore and that the June 1978 letter was in the nature of a settlement offer:

"After your affiant learned that NORTH SHORE SAVINGS AND LOAN had actually entered into an agreement with Mr. Woods for acquisition of the

property, and further learned that another company was to be involved in the development of the property, your affiant did believe and still does believe that McKenna had breached NORTH SHORE's agreement to participate in this development with FARNSWORTH and to compensate FARNSWORTH for its efforts and consulting services regarding the type of development, the soil testing, the right of first refusal, etc. You affiant believed that FARNSWORTH's damages from NORTH SHORE SAVINGS AND LOAN's breach of the agreement were extremely substantial but nevertheless your affiant, for business purposes and because of the previous condition of friendship with McKenna, did not wish to sue NORTH SHORE SAVINGS AND LOAN for breach of the entire agreement. Therefore, your affiant wrote to McKenna on June 23, 1978, agreeing to accept six percent for the FARNSWORTH services and attempting to hold the door open for further cooperation with NORTH SHORE SAVINGS AND LOAN in the project. * * * " (Regan affidavit ¶ 16.)

Aside from the conclusory statements during the Mappa deposition and in the Regan affidavit that plaintiff and defendant had a development and advisory contract and that plaintiff suffered substantial damage from defendant's breach, however, Farnsworth has pointed to nothing in the record which shows that the terms of such an agreement were ever arrived at or that Farnsworth performed non-acquisition services pursuant to the agreement which were of any benefit to the defendant. The court in its own review of the record has found no support for the plaintiff's contention set forth in its complaint that it "did perform the aforesaid consulting services, planning, negotiation, acquisition of control of the site, engineering and design, and other services in connection with said project, * * *; and the plaintiff did thereby confer a benefit of great economic value upon the defendant NORTH SHORE which accepted and retained said benefit * * *." (Complaint ¶ 25.)

Disputed factual issues may not be resolved by affidavit on summary judgment, but in opposing a motion for summary judgment where the movant has made a showing of entitlement, "the burden rests on the opposite party to show that he had a plausible ground for maintenance of his cause of action." *First National Bank Company of Clinton, Illinois v. Insurance Company of North America*, 606 F.2d 760, 767 (7th Cir. 1979). Conclusory statements contained in an affidavit which are unaccompanied by statements of fact do not raise a genuine issue for trial. *Ibid.*, at 768; *Freeman v. Decio*, 584 F.2d 186, 196–197 (7th Cir. 1978). Evidence contained in a witness' affidavit which contradicts his deposition testimony cannot be disregarded in ruling on a summary judgment motion, *Adams v. United States*, 392 F.Supp. 1272, 1274, 1275 (E.D.Wis.1975); cf. *Perma Research and Development Company v. Singer Company*, 410 F.2d 572, 578 (2d Cir. 1969), but on the other hand the issue thereby created must be "genuine." *Choudhry v. Jenkins*, 559 F.2d 1085, 1090 (7th Cir. 1977); *Radobenko v. Automated Equipment Corporation*, 520 F.2d 540, 544 (7th Cir. 1975).

In this case the only support in the record for plaintiff's claim of entitlement to a quantum meruit recovery is the statement quoted above in the final paragraph of Regan's affidavit that Farnsworth had an implied consulting and development contract with North Shore and suffered substantial damage as a result of North Shore's breach, and Mappa's statement made during his deposition that if North Shore ultimately acquired the Woods property and built on the site, it could not help but be benefited by the advisory services which Farnsworth had provided. (Mappa dep. of 2/20/79–2/21/79 at 69–70.) Both those statements are conclusory, they are unsupported by statements of fact, and they do not constitute "significant probative evidence tending to support the complaint." *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1967); *Freeman v. Decio*, supra, at 196–197. The defendant therefore is entitled to summary judgment on Count III.

For the foregoing reasons,

IT IS ORDERED that the defendant's motion for summary judgment is granted and Counts I and III of the complaint are dismissed with prejudice.