Paul F. RAMSEY, Plaintiff-Appellant,

v.

Robert P. ELLIS, III, Individually and as President of Robert P. Ellis Investment Real Estate, Inc., Robert P. Ellis Investment Real Estate, Inc., Defendants-Respondents.†

Court of Appeals

*No. 89–2300. Submitted on briefs October 31, 1990.—Decided May 16, 1991.*

(Also reported in 471 N.W.2d 289.)

†Petition to review granted.

378

For the plaintiff-appellant the cause was submitted on the briefs of *Bronson C. La Follette* and *Arthur Thexton* of Madison.

For the defendants-respondents the cause was submitted on the briefs of *Frank J. Bucaida* and *Timothy D. Fenner* of *Axley Brynelson* of Madison.

Before Eich, C.J., Gartzke, P.J., Sundby, J.

GARTZKE, P.J. Paul Ramsey appeals from a judgment dismissing his complaint against Robert P. Ellis, III, and the corporation bearing his name. Ramsey seeks compensation for his work in the defendants' business. The issues are whether (1) Ramsey was deprived of a full trial on the damages part of his quantum meruit claim, (2) the "periodic payment" presumption applies, (3) the trial court's finding regarding Ramsey's compensation on the "Tara Project" is clearly erroneous, and (4) photocopying costs may be taxed under sec. 814.04(2), Stats.

We conclude that Ramsey is entitled to a trial on damages; the periodic payment rule is a factual presumption which, if unrebutted, can bar damages in an action for quantum meruit, but the payments to Ramsey do not activate the presumption; the trial court's findings on the Tara project were insufficient; and the photocopying costs may not be taxed. We reverse and remand for further proceedings involving Ramsey's damages and for findings regarding the Tara project.

380

In 1983 and 1984, Ellis operated a real estate brokerage and syndication business, first as an individual and then through a corporation bearing his name. Ramsey worked in association with the business on various projects for fifteen months in 1983 and 1984, and was paid about $85,000.

Ramsey brought this action to recover additional compensation. He alleged several theories. By the time of trial to the court, he was down to two theories—that he, Ellis and the corporation were partners, and, alternatively, that he is entitled to quantum meruit. The defendants moved to divide the trial into liability and damages phases. The trial court granted the motion.

The trial court rejected Ramsey's quantum meruit claim on grounds that the defendants had made periodic payments to him totaling $85,000, these payments raised a presumption that he had been adequately compensated for his services, and no evidence indicated that the $85,000 was inadequate compensation. The court also rejected Ramsey's partnership claim, but only the quantum meruit claim is before us.

Quantum meruit is awarded to avoid unjust enrichment. The elements of a claim based on unjust enrichment are: (1) plaintiff conferred benefit on defendant, (2) defendant knew of the benefit, and (3) it is inequitable for defendant to accept or retain the benefit without paying its value. *Puttkammer v. Minth,* 83 Wis. 2d 686, 689, 266 N.W.2d 361, 363 (1978). Recovery is based on the defendant's duty to return the benefit and not on a promise or agreement to pay for the benefit. *Goff v. Massachusetts Protective Ass'n, Inc.,* 46 Wis. 2d 712, 716–17, 176 N.W.2d 576, 579 (1970). One who is unjustly enriched at the expense of another person must repay

that person. *In re Kordecki,* 95 Wis. 2d 275, 282, 290 N.W.2d 693, 696 (1980).

The trial court relied on *Gename v. Benson,* 36 Wis. 2d 370, 153 N.W.2d 571 (1967), as authority for the periodic payment presumption it applied to Ramsey's claim. In *Gename,* the plaintiff sought quantum meruit for her services to the defendant during two and one-half years. Plaintiff initially received $15 a week, and that amount eventually grew to $160 per month. The court said that the plaintiff had failed to rebut the presumption that the periodic payments to her were "in full for all services rendered," 36 Wis. 2d at 377, 153 N.W.2d at 575, *citing Estate of Breitzman,* 236 Wis. 96, 294 N.W. 489 (1940).

The *Breitzman* court held that "where a stated sum has been regularly and periodically paid for services during a decedent's lifetime, such payment is presumed to have been in full unless decedent is shown to have expressly agreed to additional payment." 236 Wis. at 98, 294 N.W. at 490. *Breitzman* states the "established rule." *Estate of Kandall,* 270 Wis. 349, 355, 71 N.W.2d 283, 286 (1955).

Ramsey asserts that the periodic payment presumption applies only to claims against estates for services rendered to a decedent during the decedent's lifetime. We disagree. Most of the Wisconsin cases employing the presumption involved claims for services to a decedent.[1]

---

[1] *In re Huber,* 81 Wis. 2d 55, 259 N.W.2d 714 (1977); *Estate of Ford,* 23 Wis. 2d 60, 126 N.W.2d 573 (1964); *Estate of Kandall,* 270 Wis. 349, 71 N.W.2d 238 (1955); *Estate of Del Marcelle,* 259 Wis. 47, 47 N.W.2d 341 (1951); *Estate of Benson,* 251 Wis. 226, 29 N.W.2d 48 (1947); *Will of Luyster,* 251 Wis. 154, 28 N.W.2d 312 (1947); *Estate of Evans,* 248 Wis. 456, 22 N.W.2d 497 (1946); *Estate of Gifford,* 244 Wis. 570, 12 N.W.2d 921 (1944); *Estate of*

The presumption is not so limited, however. The *Gename* court applied the presumption in an action against the living defendant who had received services, not his estate.[2] The presumption is said to be founded on the suspicion the law has generally held for deferred claims for personal services. *In re Huber,* 81 Wis. 2d 55, 59, 259 N.W.2d 714, 715 (1977). While that suspicion may be greater when a claim is made against a decedent's estate, it attaches because the claim is deferred, not because the person benefitted is dead.

Here the undisputed facts are that the defendants' payments to Ramsey were irregular both as to date and amounts. He received $10,000 on October 14, 1983, $15,000 on October 28, 1983, $10,000 on January 16, 1984, $12,500 on April 11, 1984, $12,500 on May 25, 1984, and $5,000 on November 9, 1984, and he did not repay a $20,000 loan which the trial court included in the $85,000 total.

The record contains invoices Ramsey submitted for only two payments. The invoice for the second payment states it was "[f]or services re on-site and financial analysis of various apartment projects and Illinois attorney for Surrey Ridge project." The two invoices covering the third payment state they were for services and expenses regarding "various on-site inspections and analysis of apartment projects." The parties agree that the other payments were for various real estate projects. The $20,000 loan is not attributed to a specific project.

While the payments were periodic in the sense that they were made at intervals, no suggestion is made that those payments reflect stated or fixed compensation for

*Breitzman,* 236 Wis. 96, 294 N.W. 489 (1940); *Estate of Kniffen,* 231 Wis. 589, 286 N.W. 8 (1939).

[2]Although the opinion does not so state, the briefs to the Supreme Court show that the defendant was alive.

fixed periods. Such a suggestion would be facially inconsistent with the variations in the intervals and the payments themselves. The payments do not consist of "a stated sum [which] has been regularly and periodically paid for services," as required by *Breitzman,* 236 Wis. at 98, 294 N.W. at 490.

We conclude as a matter of law that the periodic payment rule does not apply to the facts of this case. The trial court erred when it applied the presumption. For that reason, the court erred when it dismissed Ramsey's quantum meruit claim on the basis of the presumption without hearing the damages phase of the trial.

Ramsey claims that the trial court also erred in finding that he is not entitled to compensation on the Tara project. The trial court's findings with respect to the Tara project are insufficient. The court found that "in a limited way, Ramsey did some work on the Tara Project," that it had been brought to the corporation by another associate and that the "bulk of the work" on it had been done by three other associates and not Ramsey. The trial court's findings do not establish whether Ramsey's work on the Tara project conferred a benefit on the defendants, whether they knew of the benefit and whether the circumstances make it inequitable for the defendants to retain the benefit without paying its value. On remand the trial court should make findings on the Tara project.

Ramsey argues that the trial court improperly taxed costs against him for photocopying costs, pursuant to sec. 814.04(2), Stats. Because the same question of costs may arise on remand, we address it now in the interests of judicial economy. We agree that the trial court erred.

According to a letter they submitted to the trial court, the defendants requested that it tax $1,263.10 at their current charge of fifteen cents per page.[3] At that rate, the request covers 8,420 and two-thirds pages. The court granted $631.55, half the amount requested, for "photocopy service." Section 814.04, Stats., provides in relevant part:

> [W]hen allowed[,] costs shall be as follows:
>
> . . ..
>
> (2) All the necessary disbursements and fees allowed by law; . . . amounts actually paid out for certified copies of papers and records in any public office; . . .; plats and photographs, not exceeding $50 for each item; . . ..

"Photograph" is not defined in sec. 814.04(2), Stats. The defendants rely on a dictionary definition of "photocopy" as "a photographic reproduction." They further rely on language in sec. 814.11, Stats.: "Charges in a bill of costs for . . . copies of documents or other disbursements . . . shall not be taxed without an affidavit stating . . . that such copies were necessarily obtained for use . . .." They contend that this provision, read with sec. 814.04(2), Stats., evinces an intent to include "photocopy" disbursements in the taxation of costs.

We are not free to take a broad view of the costs statute, sec. 814.04(2), Stats.

---

[3]The letter states in part:

This represents all photocopying incurred since the inception of this action . . .. Further, the record will show that the plaintiff made a document request upon the defendants to inspect documents. In accordance with that document request, we photocopied virtually all of the defendants' files and had them in our office for inspection by the plaintiff had he so elected to do so. [Sic] Photocopying expenses were directly incurred as a result of this discovery request.

The terms "allowable costs" or "taxable costs" have a special meaning in the context of litigation. The right to recover costs is not synonymous with the right to recover the expense of litigation. This right is statutory in nature, and to the extent that a statute does not authorize the recovery of specific costs, they are not recoverable. Many expenses of litigation are not allowable or taxable costs even though they are costs of litigation.

*State v. Foster,* 100 Wis. 2d 103, 106, 301 N.W.2d 192, 194 (1981) (citations omitted).

██

We have not been directed to examples in the record of the photocopies. We assume that they are common photocopies made by the process known as xerography. That process does not produce a "photograph" in the ordinary sense of the term. "Copies," as used in sec. 814.11, Stats., does not expand the disbursements allowed by sec. 814.04(2), Stats., but refers only to the "certified copies of papers and records in any public office" described in sec. 814.04(2). We conclude that costs of photocopies may not be taxed as "photographs" under sec. 814.04(2), Stats.

*By the Court.*—Judgment reversed and cause remanded.