Estate of Kniffen : Caldwell and another, Respondents, vs. Kniffen and others, Appellants.

*May 11—June 6, 1939.*

For the appellants there was a brief by *Adams & Adams* of Beloit, and oral argument by *Harry W. Adams* and *Allan W. Adams*.

For the respondent Helen Caldwell there was a brief by *McGowan & Geffs* of Janesville, and oral argument by *Jacob Geffs* and *George S. Geffs*.

For the respondent Jessie Franklin there was a brief by *Moran & O'Brien* of Delavan, and oral argument by *J. Arthur Moran*.

FAIRCHILD, J. The claimant took care of her uncle in her own home over a period of more than a year and a half. She admits that she was paid regularly every two weeks, but she contends that what she received was not in full for her services. In support of her claim that she should have been paid more she offers proof of the reasonable value of such care and support as she furnished, and also statements made by certain of the contesting legatees that the services were worth $25 per week.

It is evident that the claimant was never satisfied with what she was paid, but the circumstances warrant only one

inference, and that is, that her uncle never entered into any contract to pay more. She herself testified that she was paid every two weeks by Walter Larson, who had been appointed by her uncle as business agent. According to her testimony she at first received $20 every two weeks, then $30, and finally $40, so that for a part of the time she was paid at the rate of $20 per week. She admitted cashing checks for the amounts of these payments and the canceled vouchers are in the record.

The claimant is a daughter of Jessie Franklin, executrix of the will of the deceased. The executrix and the claimant entered into a stipulation which recited that a claim of $813.52 had been filed against the estate, that oral objection to the allowance of the claim in full had been made by the executrix, and that "whereas, it is desired by the parties to compromise and adjust said claim without the filing of a formal objection, and it being agreed that the sum of $575 is a reasonable settlement and one that is fair to the estate; now, therefore, it is stipulated, . . . that the above-described claim be allowed at the sum of $575." In an affidavit filed by the claimant it is stated that this stipulation was entered into subject to the approval of the court. Testimony having been taken on the reasonable value of the claimant's services, she obtained an order to show cause why the stipulation should not be set aside and her claim allowed in full. Cause was shown by the executrix and the claimant's motion to set aside was denied.

The contesting legatees did not consent to the stipulation, and in view of the fact that it was entered into subject to the approval of the court and was disaffirmed by the claimant herself before judgment was rendered, it cannot now be relied upon by her to overcome the objections of the legatees who contest her claim. Because of evidence in the record indicating that the executrix had good reason to resist the claim of her daughter, the stipulation is of doubtful validity, apart

from the question of disaffirmance. While an executor has some authority to settle well-founded claims, he also has a duty to protect the estate against claims which are unfounded, and to interpose every legal defense to a claim if he has any reason to doubt its validity. 2 Woerner, American Law of Administration (3d ed.), p. 1023, § 324.

In the record there is a letter which Mrs. Franklin wrote to her daughter in reply to the daughter's complaint that she was not being adequately paid for her services. Pertinent parts of this letter are as follows: "Now Arch was getting good care and for $15 and doctor bills included for $15. . . . You took him for $10, you surely should be contented with $15. I can't do anything. And if Walter had a dozen powers of attorney he could not pay you without Arch's consent. . . . If you cannot do it for the $15, all I can do is to hunt him another place." In fact, the testator did move to another home and later to a sanitarium, and at each place he was kept for $15 per week.

It clearly appears from the record that the claimant continued to render services knowing that her uncle was unwilling to pay more than he did. What she or her relatives believed the services to be worth is not material. Having accepted payment in the amounts fixed by the deceased, she cannot now claim additional compensation from the estate.

*By the Court.*—Judgment reversed, and cause remanded with directions to disallow the claim.