ESTATE OF GIFFORD: TURNER, Claimant, Respondent, vs. ORCHARD, Administrator, Appellant.

*January 18—February 15, 1944.*

For the appellant there was a brief by *Riley & Riley* of Madison, and oral argument by *William Riley.*

For the respondent there was a brief by *Sanborn, Blake & Aberg* and *Edwin Conrad,* all of Madison, and oral argument by *Mr. Conrad.*

ROSENBERRY, C. J.   From the facts as found by the court it appears that until the time of her death the deceased oper-

ated a tearoom in her home in Madison, Wisconsin; that the deceased was in ill-health for two and one-half years prior to her death, and was so seriously ill during the last year and a half that she was unable to attend to her business which fell off very considerably in that period; that the claimant had worked for and under the deceased for many years and was employed by deceased primarily as a cook until August or September, 1939; that in August or September, 1939, the claimant moved into the home of the deceased, entered into a new contract of employment whereby claimant thereafter personally cared for and nursed deceased and claimant's services became primarily those of a practical nurse instead of those of a cook; that the agreed compensation for claimant's services as a cook was $10 per week, all of which was paid to her except the sum of $80, which was allowed the claimant and as to which no question is raised.

The court further found:

"That the additional services performed by claimant after she moved into deceased's home were rendered at the specific instance and request of deceased, were valuable to deceased and were known to, acknowledged and appreciated by deceased who intended that claimant be compensated therefor; that claimant expected compensation therefor."

The deceased was beset with financial troubles, and on January 15, 1941, negotiated a loan with the First National Bank of Madison, Wisconsin, the bank holding the proceeds of the loan as a trust fund and disbursing the same upon order of the deceased.

The court found that the reasonable value of claimant's services for the first year after she moved into deceased's home was $10 per week; that the reasonable value of the services for the last year and a half was $20 a week, in view of the additional burden, strain, and difficulty of the work.

On behalf of the appellant it is contended, first, that upon the facts of this case the law raises a presumption that claimant

has been paid in full and, in the absence of an express contract for extra compensation, no credible evidence having been produced to rebut the presumption. Upon her motion to review the claimant contends,—(1) that there was an express agreement between the parties that the claimant should be paid for the extra nursing services rendered by her; (2) that any presumption that claimant has been paid in full because of receiving periodic wages as a cook was rebutted by the fact that there was an express agreement between the parties that compensation would be paid for the extra services; and (3) that the presumption arising from periodic payment of wages does not apply where the extra services are not similar to the regular services; that the claimant may recover on *quantum meruit*.

The contention of the administrator that there is no credible evidence to support the court's finding requires us to give further consideration to the evidence. The evidence is not in substantial dispute. The parties were in no way related. The deceased had operated a club in Madison and one in Wausau prior to opening her tearoom in Madison, during all of which time claimant had rendered services under her supervision as a cook. As failing health made the deceased less able to care for her business, the character of the services rendered by the claimant gradually changed. The sister of the deceased lived with her until a year and a half before the death of deceased and was cared for by claimant. The deceased had a son living in Chicago but both the sister and the son predeceased decedent.

For a time the deceased handled the reservations for her tearoom herself, then the claimant took charge reporting to her mistress. After claimant moved into the home of deceased, she said:

"I took care of everything in the household. I carried deceased up and down stairs the first year. After her arm became weak, I fed her."

Claimant had received wages at the rate of $15 a week. After the character of the service was changed, she was paid $10 a week for her services as cook. This was undoubtedly due to the straitened circumstances in which the deceased found herself. There was ample evidence to sustain the finding by the court that the character of the services underwent a fundamental change. The claimant testified:

"After deceased became sick and I moved into her place I would bathe her in the morning and get her up in her chair sometimes for half an hour or so. Then I would put her back in bed and give her her medicine. Night was like day to her and I was up at all times of the night. She had to have pills three times a night. She had a bad bedsore. She couldn't dress or undress or make her bed. She couldn't feed herself. I did all this twenty-four hours a day for two and a half years.

"During the first year of deceased's illness I brought her downstairs for a while each day. . . .

"After the first year of deceased's illness I took the reservations, cooked the meals, set the table and took care of the house in general. We called in waitresses. . . .

"The last meal in the tearoom was served about a month before her death. We didn't serve many meals after her illness, just enough to ease her mind. They were mostly teas or lunches for six or eight and averaged one or two a month."

It is a general rule of law that, where one is hired for a definite term at a stipulated salary or rate of wages, he cannot recover compensation for extra services performed at the request of his employer where such services are essentially of the same character as those which the employee was performing, in the ordinary course of his employment. Under such circumstances the presumption that a payment of the stated wage or salary is payment in full obtains.

Where, however, the extra services rendered at the request of an employer are outside the general scope of the purpose for which he was originally hired, he is entitled to recover compensation for such extra service although there is no express

agreement to that effect. *Pittsburg C. C. & St. L. R. Co. v. Marable* (1920), 189 Ind. 278, 126 N. E. 849; *Robinette v. Hubbard Coal Mining Co.* (1921) 88 W. Va. 514, 107 S. E. 285. See note to this last case, "Services not within scope of employment," 25 A. L. R. beginning at p. 227.

Under the established rules of law there is ample evidence to sustain a finding of an implied contract. That is all that is necessary to sustain liability in this case. For that reason we shall not further consider whether the evidence sustains a finding of the trial court that there was an express contract.

The undisputed evidence shows that the change in the character of the services rendered by claimant took place two and one-half years prior to the death of decedent. The only evidence in the case is to the effect that the services rendered during that entire period were of the reasonable value of $25 per week. The fact that her wages as cook were reduced from $15 to $10 a week with the expectation of the deceased and the claimant that she would be paid thereafter for the value of the extra services rendered seems to mark definitely the time when the parties considered that the claimant was more of a nurse than a cook. Claimant testified that her services after October 1, 1939, were worth $25 per week. Elizabeth B. Harper testified as follows:

"Deceased being perfectly helpless would have needed two nurses otherwise. A nurse would get twenty-five dollars for eight hours service while claimant was on twenty-four hour service. Twenty-five dollars was not adequate. It was fair. It should be higher."

There is ample evidence in the record to show that claimant was a devoted, careful, competent, practical nurse and took excellent care of the deceased. We find no evidence in the record which contradicts the testimony already referred to as to the value of these services. We find nothing in the record to justify a finding that the services of a cook and nurse were

not worth $25 per week from October 1, 1939, until the time of the death of the deceased. She received $10 per week except for the eight weeks which were awarded her, as to which no question is raised.

On the appeal of the administrator, the judgment is affirmed. On claimant's motion to review, it is considered that the court was in error in limiting the claimant's claim for services as a practical nurse to one and one-half years. The judgment should be modified so as to award the claimant $15 per week for her services as a nurse from and after October 1, 1939, or the additional sum of $1,170.

*By the Court.*—On the appeal of the administrator the judgment is affirmed. On claimant's motion to review, the judgment is modified by adding thereto the sum of $1,170, making in all the sum of $2,030, and, as so modified, the judgment is affirmed.