Estate of Kandall: Klinger, Respondent, vs. Garvey, Executor, Appellant.

*May 31—June 28, 1955.*

352

For the appellant there was a brief by *Bosshard & Arneson,* attorneys, and *Engelhard, Snodgrass & Goerdt* of counsel, all of La Crosse, and oral argument by *George M. Snodgrass.*

For the respondent there was a brief by *Peterson, Antoine & Peterson* of Prairie du Chien, and oral argument by *F. J. Antoine.*

FAIRCHILD, C. J. The trial court concluded that the $12,000 check was not intended as a testamentary disposition or gift, and the respondent does not base his claim to the $12,000 upon any theory of gift either *inter vivos* or *causa mortis.* The claim advanced by respondent is that the check was written to pay him "for labor," namely, uncompensated services rendered by respondent to decedent during the years from 1934 to March, 1945, and from September, 1946, to September, 1953.

The circumstances surrounding the writing of the check and the instructions of the deceased to his attorney are found in the testimony of Attorney Hoch to the effect that:

"I saw him on December 30, 1953, at the Lutheran Hospital in La Crosse. . . .

"He discussed making a will. He mentioned his brothers, Richard and Christan; he also told me that he had a fellow by the name of Klinger working for him and that he wanted to make some provision for him in his will. In discussing it with him, at first he told me that he wanted to make a provision for Mr. Klinger and wanted to then leave the remainder to the two brothers in equal shares, but in discussing the amount to be left to Mr. Klinger, he told me that he expected to be out of the hospital in a short time and that he would then go over his affairs and decide the amount to be left to Mr. Klinger. However, he said that he did want to make some provision at that time in case matters changed. He decided on five thousand dollars ($5,000) and the remainder to his brothers, Christan and Richard, in equal shares, and I then told him I would prepare the will and would bring it out to him, with my secretary. . . . that was January 2 that we then went out with the will. He executed the will, the will which has been admitted to probate. I saw him again on January 6 [1954]. . . . I don't know what his reasons were, but he discussed writing a check to Mr. Klinger. . . . We discussed Mr. Klinger and his reasons for wanting to leave him something and if he couldn't prove it by a memorandum, and if a written memorandum wouldn't be the better thing to do, but he didn't want to do it that way. I don't know what his reasons were. So then he requested that a check be prepared . . . he felt Mr. Klinger had contributed largely to his estate and that he wanted to leave this additional amount to him and he arrived at this figure of $12,000. I then prepared the check."

Further testimony by the attorney was to the effect that he (the attorney) advised Mr. Kandall that the advisable thing to do would be to add the codicil or make a new will or have a written memorandum as to just what this check was about, but it was decedent's desire to prepare the check. The check was signed in the presence of the attorney, and decedent made a note on the check, stating to his attorney that he was going to put "For Labor" on the check. The attorney testi-

fied that at the time of the preparation of the check, deceased "stated to me to the effect that he [Klinger] had contributed to his estate and he felt that he hadn't been adequately reimbursed; I don't remember the exact words."

It is evident from that testimony that decedent was grateful for the relation which had existed between him and respondent, and that he wished to show his appreciation to respondent by making him an object of his bounty. However, as the claim is based, not on the grounds of a gift or testamentary disposition, but rather upon the grounds of a debt owed by decedent to respondent, respondent must establish a contractual relation between himself and deceased out of which the alleged debt could arise. There is no writing in the evidence to prove such a relation, and the testimony of the respondent is negative in such respect. Respondent testified as follows:

"Got paid for how many hours I worked."

"I never made a demand on Alfred Kandall for additional compensation during his lifetime."

"I continued to work for Mr. Kandall for approximately eighteen years but made no demand for payment, and got paid for the hours and the time that I worked for him."

During his lifetime decedent never paid respondent any additional compensation for his services. Respondent never demanded any, although he "felt" underpaid. Respondent did not know anything about the $12,000 check until it was presented to him by Attorney Hoch after the death of Alfred Kandall. The established rule which must be followed here is stated in *Estate of Breitzman,* 236 Wis. 96, 98, 294 N. W. 489: ". . . where a stated sum has been regularly and periodically paid for services during a decedent's lifetime, such payment is presumed to have been in full unless decedent is shown to have expressly agreed to additional payments." A further rule applicable here is stated in *Estate of Cornell,*

247 Wis. 175, 177, 19 N. W. (2d) 186, "The fact that the appellant received regular payment of wages over a long period without demanding any additional amount is an important factor rebutting any presumption of further liability for services."

The facts show only that decedent felt under some obligation for claimant's services and help, but they disclose no legal consideration requiring further compensation, because a claim for an additional sum for services already rendered and fully paid for is without consideration on which it can be based. *Meginnes v. McChesney,* 179 Iowa, 563, 160 N. W. 50, and cases already referred to. In the absence of an express contract, the mere expression of belief by decedent and belief by respondent that the latter was not sufficiently paid cannot sustain a claim for extra compensation. See *Howard v. Drexler,* 14 Pa. Super. Ct. 59; 24 C. J., Executors and Administrators, p. 280, sec. 880. The adequacy or inadequacy of the wages of respondent is beside the point here. The question is whether a contract or agreement existed between the deceased and the respondent, under which respondent can claim additional compensation.

Respondent has the burden of proving that an express contract existed between him and the testator, that services were rendered by him, and that there was a failure to pay therefor on the part of the decedent. The claim must fall because there is no showing of a contract; and the conclusion of the trial court that "the execution of said check and the acknowledgment of said indebtedness were sufficiently supported by consideration to form a proper basis for the allowance of the claim" cannot be sustained under the evidence. The judgment must therefore be reversed.

*By the Court.*—Judgment reversed.