Paul F. RAMSEY, Plaintiff-Appellant,

v.

Robert P. ELLIS, III, individually and as president of
Robert P. Ellis Investment Real Estate, Inc., and
Robert P. Ellis Investment Real Estate, Inc.,
Defendants-Respondents-Petitioners.

Supreme Court

*No. 89-2300. Oral argument February 25, 1992.—Decided June
3, 1992.*

(Also reported in 484 N.W.2d 331.)

For the defendants-respondents-petitioners there were briefs by *Frank J. Bucaida, Timothy D. Fenner, Edith F. Merila* and *Axley Brynelson,* Madison and oral argument by *Mr. Fenner.*

For the plaintiff-appellant there was a brief by *Bronson C. La Follette* and *Arthur Thexton,* Madison and oral argument by *Bronson C. La Follette.*

HEFFERNAN, CHIEF JUSTICE. This is a review of a published decision of the court of appeals, *Ramsey v. Ellis,* 163 Wis. 2d 378, 471 N.W.2d 289 (Ct. App. 1991), reversing the judgment of the circuit court for Dane county, Gerald C. Nichol, circuit judge, which dismissed Paul Ramsey's complaint against Robert P. Ellis, III, and Robert P. Ellis Investment Real Estate, Inc., and remanding the cause. The circuit court concluded in part that Ramsey's quantum meruit claim was barred by the periodic payment rule. The court of appeals held that the periodic payment rule was not applicable to Ramsey's quantum meruit claim, and remanded the case for a trial on damages. We affirm the decision of the court of appeals.

The relevant facts are as follows. In 1983 and 1984, Ellis operated a real estate brokerage and syndication business, first as an individual and then through the Robert P. Ellis Investment Real Estate corporation. Ramsey worked with Ellis and the corporation as a consultant on various brokerage and syndication ventures. An understanding existed between them that Ramsey would be reasonably compensated for all projects on which he worked which were syndicated. Over a fifteen-month period from 1983 to 1984, Ramsey was paid approximately $85,000. The payments came in the form of lump sum payments on a project-by-project basis totalling $65,000, along with forgiveness of a $20,000 loan.

After the business relationship ended in 1984, Ramsey brought this action to recover additional compensation. Ramsey alleged several theories of recovery, but by the time of trial only two theories survived—that Ramsey was a partner with Ellis and the corporation entitled to one-eighth or one-ninth of the profits, or in the alternative that Ramsey was entitled to recovery under quantum meruit. Upon the defendants' motion, the circuit court bifurcated the trial into liability and damages phases.

After the liability phase was completed, the circuit court rejected Ramsey's partnership claim. That claim is not before this court. The circuit court also rejected Ramsey's quantum meruit claim, finding that the defendants had made periodic payments to Ramsey totaling $85,000, that these payments raised a presumption that Ramsey had been adequately compensated for his services, and that there was no evidence in the record to indicate that $85,000 was not reasonable compensation for Ramsey's services. Accordingly, without reach-

ing the damages phase of the trial, the circuit court dismissed Ramsey's complaint with prejudice.

Ramsey appealed only the quantum meruit claim, arguing that the circuit court erroneously applied the periodic payment rule and that the circuit court made insufficient findings regarding Ramsey's work on the "Tara project," a syndicated project for which Ramsey received no compensation. The court of appeals agreed with Ramsey and remanded the case to the circuit court for a trial on damages and for additional findings regarding the Tara project.[1] We now affirm.

Literally translated, "quantum meruit" means "as much as he deserves." *Mead v. Ringling,* 266 Wis. 523, 529, 64 N.W.2d 222, 65 N.W.2d 35 (1954). Recovery in quantum meruit is allowed for services performed for another on the basis of a contract implied by law to pay the performer the reasonable value of the services. *Estate of Lade,* 82 Wis. 2d 80, 88, 260 N.W.2d 665 (1978); *Gename v. Benson,* 36 Wis. 2d 370, 376, 153 N.W.2d 571 (1967). To establish an implied contract, the plaintiff must show that the defendant requested the services and that the plaintiff expected reasonable compensation. *Id.*

Although we agree with its decision, the court of appeals in this case erroneously equated quantum meruit with a claim of unjust enrichment:

> Quantum meruit is awarded to avoid unjust enrichment. The elements of a claim based on unjust

---

[1] The court of appeals also reversed the circuit court's finding that photocopying costs may be taxed under sec. 814.04(2), Stats. *Ramsey,* 163 Wis. 2d at 384–86. That issue is not before this court.

enrichment are: (1) plaintiff conferred benefit on defendant, (2) defendant knew of the benefit, and (3) it is inequitable for defendant to accept or retain the benefit without paying its value.

*Ramsey,* 163 Wis. 2d at 381. While these two sentences are separately correct, together they fail. The common law action for quantum meruit, like all common law quasi-contractual claims, was founded upon the principle of unjust enrichment. *Seegers v. Sprague,* 70 Wis. 2d 997, 1003-04, 236 N.W.2d 227 (1975). However, quantum meruit is a distinct cause of action from an action for unjust enrichment, with distinct elements and a distinct measure of damages. While recovery for unjust enrichment is based upon the inequity of allowing the defendant to retain a benefit without paying for it, recovery in quantum meruit is based upon an implied contract to pay reasonable compensation for services rendered. No contract is implied in an action for unjust enrichment. Accordingly, damages in an unjust enrichment claim are measured by the benefit conferred upon the defendant, while damages in a quantum meruit claim are measured by the reasonable value of the plaintiff's services.

Having recognized that quantum meruit is a distinct cause of action from unjust enrichment, we consider whether Ramsey successfully proved his quantum meruit claim at the liability phase of the trial. There is no dispute regarding the circuit court's finding that Ramsey proved the existence of an implied contract. The defendants requested Ramsey's services and Ramsey expected reasonable compensation for his work on syndicated projects. The defendants argue simply that Ramsey has already received reasonable compensation. The circuit court found that the payments made to Ramsey

triggered the periodic payment rule, which creates a presumption that the payments were in full for all services performed. Because Ramsey failed to rebut this presumption by showing that he in fact was not reasonably compensated, the circuit court dismissed his claim for quantum meruit. The circuit court erred.

This court has discussed the periodic payment presumption on numerous occasions.[2] The majority of these cases involved a claim against a decedent's estate for compensation for personal services, where the plaintiff received payments at the time the services were performed. In one such case this court held that:

> [W]here a stated sum has been regularly and periodically paid for services during a decedent's lifetime, such payment is presumed to have been in full unless decedent is shown to have expressly agreed to additional payments.

*Estate of Breitzman,* 236 Wis. 96, 98, 294 N.W. 489 (1940). While the vast majority of these cases involve claims against a decedent's estate, it applies as well when the defendant is alive. *See, e.g., Gename, supra.*

The presumption of full payment is founded upon a suspicion of deferred claims for personal services. *In re*

---

[2]*In re Estate of Huber,* 81 Wis. 2d 55, 259 N.W.2d 714 (1977); *Gename v. Benson,* 36 Wis. 2d 370, 153 N.W.2d 571 (1967); *Estate of Ford,* 23 Wis. 2d 60, 126 N.W.2d 573 (1964); *Estate of Kandall,* 270 Wis. 349, 71 N.W.2d 283 (1955); *Estate of Del Marcelle,* 259 Wis. 47, 47 N.W.2d 341 (1951); *Estate of Benson,* 251 Wis. 226, 29 N.W.2d 48 (1947); *Will of Luyster,* 251 Wis. 154, 28 N.W.2d 312 (1947); *Estate of Evans,* 248 Wis. 456, 22 N.W.2d 497 (1946); *Estate of Gifford,* 244 Wis. 570, 12 N.W.2d 921 (1944); *Estate of Breitzman,* 236 Wis. 96, 294 N.W. 489 (1940); *Estate of Kniffen,* 231 Wis. 589, 286 N.W. 8 (1939).

*Estate of Huber,* 81 Wis. 2d 55, 59, 259 N.W.2d 714 (1977). "The law has always regarded with great suspicion the deferring of a claim until a solvent person is deceased and can make no answer or denial." *Estate of St. Germain,* 246 Wis. 409, 412, 17 N.W.2d 582 (1945). However, when the defendant is alive and can respond to the claim, the suspicion is largely dissipated. In that case, the presumption of full payment arises not only from the deferred nature of the claim, but also from the assumption that a person who received regular payments while performing services expected to be paid no more. The presumption does not arise whenever there is a deferred claim, but only when the claimant received regular and periodic payments while performing services. The focus is thus properly on the nature of the payments and their relationship to the services performed.

■ One characteristic pervades the cases applying the periodic payment presumption: the payments which triggered the presumption were in the form of wages or a salary, with a stated sum having been paid by the hour, week or month. For example, in *Gename,* 36 Wis. 2d at 377, relied upon by the circuit court, the plaintiff initially received $15 per week, which eventually grew to $160 per month.[3] In each case the plaintiff received pay-

---

[3] *See also Huber,* 81 Wis. 2d at 58 ($126 per week for services at a grocery store); *Ford,* 23 Wis. 2d at 69 ($1,900 to $3,645 per year for managing property); *Kandall,* 270 Wis. at 350–51 ($2.50 to $25 per week for mechanical and other services); *Del Marcelle,* 259 Wis. at 50 ($25 per week for room, board and care); *Benson,* 251 Wis. at 227 ($35 per month for room, board and care); *Luyster,* 251 Wis. at 155 ($3.50 to $5 per week for "household and domestic services"); *Evans,* 248 Wis. at 457 ($7 per week for room and board); *Gifford,* 244 Wis. at 574 ($10 per week for services as a cook); *Breitzman,* 236 Wis. at 97 ($15 to $20 per month for

ments which, in the ordinary course of typical business relationships, would constitute payment in full. Hence, there is a suspicion that the payments constituted payment in full, and that the plaintiff in fact expected to receive no more.

The payments made to Ramsey are of a different sort altogether. Ramsey provided services to the defendants as an independent contractor on numerous real estate projects. Ramsey was to be compensated on a project-by-project basis, on projects which were syndicated, after the fees were received. There was no discernable formula for determining Ramsey's compensation. As the circuit court found:

> The Court does not find that the corporation adopted or ratified a compensation formula for the plaintiff during the 15-month period, except on a project-by-project basis.
>
> . . ..
>
> Ellis had a very loose management style. And that management style is indicated by the fact that there is an ad hoc type of operation. There [are] no nice guidelines as to what is going to be compensation.

Ramsey received six payments ranging from $5,000 to $15,000 between November, 1983 and November, 1984. In addition, Ramsey received compensation totaling $20,000 in the form of loan forgiveness. The record indicates that Ramsey received compensation for some projects which were not syndicated, and did not receive compensation for at least one project which was syndicated, contrary to the tacit agreement acknowledged by

---

room and board); *Kniffen,* 231 Wis. at 591 ($10 to $20 per week for care and support).

both parties.[4]

██

These payments bear no resemblance to the periodic and regular wages or salaries involved in previous cases. Certainly, as the defendants argue, the payments to Ramsey were periodic in the sense that they were made upon completion of the various real estate syndication projects (and some brokered projects), but there is no indication that the amounts reflected the reasonable value of Ramsey's work on each project or that they were understood to be payment in full. Because the payments do not fit the familiar pattern of wages or salary which ordinarily constitute payment in full, the law will not presume them to be payment in full. Indeed, the fact that Ramsey was not paid at all for the Tara project, on which the defendants admit he worked to some extent and which was eventually syndicated, underscores the fact that Ramsey's compensation was neither periodic nor regular in the sense that the law will presume that he was paid in full for his services.[5]

---

[4]The record indicates that Ramsey was compensated in the following amounts: $10,000 for the Surrey Ridge project, which was not syndicated; $25,000 plus forgiveness of one-half of a $20,000 loan for the Village Apartment project, which was syndicated; $12,500 for the Post Oaks project, which was syndicated; $12,500 plus forgiveness of the other half of the $20,000 loan for the Starlight and Riverview projects, which were syndicated; and $5,000 for the Alpine project, which was brokered. Ramsey received no compensation for the Tara project, half of which was syndicated.

[5]It should be noted that the refusal to apply the periodic payment presumption is not fatal to the defendants. Ramsey must still prove that he was not paid a reasonable amount for his services, and there is no reason to doubt the trial court's capacity in this regard.

Outside of the periodic payment presumption, the question still exists whether Ramsey proved sufficient facts to establish liability and entitle him to a trial on damages. The defendants argue that a plaintiff in a quantum meruit action must prove at the liability phase that he or she has not already been reasonably compensated. We disagree. To so hold would obviate the utility of a bifurcated trial in this quantum meruit action. To prove that he was not reasonably compensated the plaintiff would be required to prove the reasonable value of his services, which would establish damages. Rather, at the liability phase of a quantum meruit action, the plaintiff must prove the existence of an implied contract to pay the plaintiff the reasonable value of his services. At this point the action must proceed to the damages phase, where the court will determine the reasonable value of the plaintiff's services and what, if any, damages the plaintiff is entitled to recover.

Ramsey has proved the existence of an implied contract that the defendants would pay him for the reasonable value of his services. Because the periodic payment presumption does not apply in this case, the action must move to the damages phase to determine the reasonable value of Ramsey's services and whether Ramsey is entitled to any recovery. Because Ramsey only expected to be paid for syndicated projects, his work on and payments received for brokered and other non-syndicated projects must be discounted. They are irrelevant for purposes of determining recoverable damages under quantum meruit. The circuit court erred in considering such payments as part of Ramsey's compensation under the implied contract. In effect, these payments constituted little more than a bonus to Ramsey.

■■

The defendants stress the fact that the circuit court found that Ramsey had been reasonably compensated. The circuit court's finding in this respect was error. The circuit court never heard testimony or viewed other evidence regarding the reasonable value of Ramsey's services. The circuit court may not substitute its own judgment as to the reasonable value of the plaintiff's services in a quantum meruit action. *Will of Gudde,* 260 Wis. 79, 86, 49 N.W.2d 906 (1951).

■■

In conclusion, we hold that Ramsey established liability under quantum meruit by proving an implied contract with the defendants to pay Ramsey the reasonable value of his services on syndicated projects. The sporadic payments made to Ramsey for various syndicated and non-syndicated projects do not trigger the periodic payment presumption, and thus the circuit court erred in dismissing Ramsey's claim prior to the damages phase of the trial. Ramsey is entitled to prove his damages for all projects which were syndicated by the defendants.

We affirm the decision of the court of appeals and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

*By the Court.*—Decision affirmed and cause remanded.