LUNDSTEN, P.J.[1]
¶1 Hanson Law Group (HLG) appeals a judgment and order in favor of Bethany Wilson. HLG challenges the circuit court's decision to void a contract between HLG and Wilson. Wilson cross-appeals, arguing that the circuit court erred when calculating the appropriate damages. I affirm the court's decision to void the contract and also affirm the award of damages.
Background
¶2 This small claims action was tried to the circuit court on February 15, 2018. I do not attempt to summarize all of the relevant testimony here. What follows in this section are undisputed facts, unless otherwise noted, based on the complaint, the pleadings, and the trial testimony.
¶3 Wilson entered into a written contract with HLG, under which Wilson would perform legal work and submit her hours to HLG. Under the contract, HLG would pay Wilson based on the number of hours HLG, in its "sole discretion," determined should be billed to clients. As to Wilson's hours actually billed to clients, Wilson was to be paid 1/3 the hourly rate billed to a client if the client actually paid HLG within six months of the time the contract was terminated.
¶4 Wilson began working part time for HLG on May 8, 2017, first as a law clerk, and then, after admission to the bar about three weeks later, as an attorney. Wilson submitted 92.8 hours to HLG with the subjective expectation that HLG would bill those hours to clients. Wilson worked an additional 5 hours on a contingent fee case, but did not submit those hours for payment.
¶5 On June 12, 2017, Wilson gave two weeks' notice, and the relationship was terminated on June 26, 2017. During the term of the contract, Wilson received no payments from HLG. Wilson filed this lawsuit on June 28, 2017. In December 2017, HLG paid Wilson $862.50 for 11.5 hours of work.
¶6 At trial, Wilson's theory of recovery was that the contract should be declared void because she was induced to enter into the contract by misrepresentations made by Attorney Kyle Hanson of HLG. According to Wilson, Attorney Hanson made misrepresentations with respect to the likelihood that Wilson would be paid under the contract. Wilson asserted that she was entitled to recover under a theory of quantum meruit. Attorney Hanson denied making any misrepresentations and testified that HLG complied with all provisions in the contract.
¶7 After hearing evidence and argument, the circuit court determined that the contract was unconscionable and therefore unenforceable. This was the first mention in the record of this theory of recovery. Neither party argued that the circuit court could not rely on this theory of recovery. In a motion for reconsideration, HLG argued that the evidence did not support a finding of unconscionability. But HLG did not argue that it was improper for the circuit court to raise the theory sua sponte.
¶8 When the circuit court calculated damages, it did not, as Wilson requested in her complaint, apply the contract one-third-of-billing formula to all of the hours Wilson submitted to HLG. This approach, according to Wilson, would have involved multiplying all or most of the hours she worked times rates ranging from $65 to $100 per hour. The court took a very different approach. Relying on the court's personal experience as a new attorney and on his knowledge of the hourly rate currently paid to staff attorneys working for the Dane County Circuit Courts, the court ordered that Wilson be paid $15 an hour for all hours she worked while still a law student and $17 an hour for all hours she worked after admission to the bar. More specifically, the court ordered that Wilson be paid $15 an hour for 53.7 hours and $17 an hour for 44.1 hours, for a total of $1,555.20. The court then added attorney's fees and other costs totaling $243.06 and deducted the $862.50 that HLG had already paid Wilson. The net sum HLG was ordered to pay Wilson was $935.76.
Discussion
¶9 I begin my discussion by observing that this is an unusual small claims action. It is a contract dispute among lawyers, but at the same time the circuit court was faced with both poorly developed legal arguments and evidence that was both convoluted and incomplete. So far as I can tell, the circuit court would have been justified in ruling against Wilson on the merits because she did not prove what she attempted to prove: a misrepresentation by HLG prior to the execution of the contract that warranted voiding the contract. Still, I also believe that the circuit court's unconscionability theory of recovery holds up, and affirm that determination. As to remedy, I affirm the amount of the judgment in light of Wilson's failure to present relevant compensation evidence.
¶10 In the following sections, I first address HLG's arguments in its appeal. I then address Wilson's cross-appeal.
I. HLG's Appeal
A. Whether the Circuit Court Erred by Relying on a Theory of Recovery Not Raised or Argued by the Parties
¶11 HLG, relying on case law and statutory authority, argues that it was error for the circuit court to rely on a theory of recovery not advanced by Wilson, or otherwise mentioned, before the circuit court gave its oral ruling and that HLG was prejudiced by this error. This is, in effect, a due process argument alleging a lack of notice. I reject the argument.
¶12 First, HLG points to law supposedly at odds with the circuit court's action for the first time on appeal. HLG did not point to this law or otherwise object during the trial or in its motion for reconsideration. I deem the argument forfeited. See State v. Caban , 210 Wis. 2d 597, 604, 563 N.W.2d 501 (1997) ("The general rule is that issues not presented to the circuit court will not be considered for the first time on appeal.").
¶13 Second, even assuming the circuit court erred in raising unconscionability sua sponte, HLG fails to persuade me that HLG suffered prejudice.
¶14 HLG asserts on appeal that it was prejudiced because HLG "desired to submit evidence on the lack of procedural unconscionability, particularly the lack of knowledge at the time of contracting." But HLG's appellate brief-in-chief does not tell me what this evidence might be. And, I am unable to discern what such evidence might be or why HLG suffered prejudice by the absence of an opportunity to present it. I discuss the matter no further.
B. Whether the Circuit Court Correctly Declared the Contract Void
¶15 HLG argues, in the alternative, that, even if it was proper for the circuit court to consider unconscionability, the circuit court erred in concluding that the contract was unconscionable. HLG does not challenge any express or implied fact-finding by the circuit court. Rather, HLG argues that the circuit court erred as a matter of law because the evidence does not satisfy the test for unconscionability. Thus, I will assess whether facts found expressly or implicitly by the circuit court satisfy the unconscionability test. See Wisconsin Auto Title Loans, Inc. v. Jones , 2006 WI 53, ¶25, 290 Wis. 2d 514, 714 N.W.2d 155 (whether the facts found by the circuit court render a contract provision unconscionable is a question of law, which is reviewed de novo).
¶16 "A contract is unconscionable when no decent, fair-minded person would view the result of its enforcement without being possessed of a profound sense of injustice." Foursquare Props. Joint Venture I v. Johnny's Loaf & Stein, Ltd. , 116 Wis. 2d 679, 681, 343 N.W.2d 126 (Ct. App. 1983).
¶17 Courts apply a balancing approach to the unconscionability question. Discount Fabric House of Racine, Inc. v. Wisconsin Tel. Co. , 117 Wis. 2d 587, 602, 345 N.W.2d 417 (1984). "To tip the scales in favor of unconscionability requires a certain quantum of procedural plus a certain quantum of substantive unconscionability." Id. I understand the teaching of Discount Fabric House to be that there are degrees of both procedural and substantive unconscionability and that less of one can be offset by more of the other.
¶18 Here, I conclude that procedural unconscionability exists but is relatively mild. Substantive unconscionability, on the other hand, is relatively strong. On balance, I agree with the circuit court that the contract was unconscionable.
¶19 The question of procedural unconscionability requires examining the formation of the contract to determine whether there was a " 'real and voluntary meeting of the minds of the contracting parties.' " Wisconsin Auto Title , 290 Wis. 2d 514, ¶34 (quoted source omitted). The relevant factors include, but are not limited to:
age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms would have been permitted by the drafting party, and whether there were alternative providers of the subject matter of the contract.
Id. The relevant factors above weigh in favor of a determination that the contract was procedurally unconscionable.
¶20 First, Wilson was a law student at the time of contracting and had little bargaining power.
¶21 Second, the terms of the contract were set by HLG. Nothing in the evidence suggests a meaningful negotiation.
¶22 Third, HLG did not explain its billing practices in terms of how often it billed clients or how often and under what circumstances clients might refuse to pay bills. This was a significant omission because Wilson was only paid if a client paid and, even then, only if the client paid a bill within six months of the time the contract terminated.
¶23 Taken together, I conclude that these factors demonstrate some quantum of procedural unconscionability. I turn my attention to substantive unconscionability.
¶24 Substantive unconscionability relates to the fairness and reasonableness of the contract provision being challenged. Id. , ¶35. Wisconsin courts determine whether a contract provision is substantively unconscionable on a case-by-case basis. Id.
¶25 With respect to substantive unconscionability, I first reject the circuit court's reliance on what happened after Wilson and HLG entered into their agreement. The circuit court emphasized that Wilson ended up being paid very little. The circuit court calculated that Wilson was effectively paid $8.82 per hour for the hours she submitted. As HLG correctly points out, substantive unconscionability focuses on the terms of the contract, not on how the contractual relationship plays out. See WIS. STAT . § 402.302 ; Deminsky v. Arlington Plastics Mach. , 2003 WI 15, ¶27, 259 Wis. 2d 587, 657 N.W.2d 411. Nonetheless, I agree with the circuit court's conclusion that the contract is "extremely one-sided" and, therefore, substantively unconscionable.
¶26 First, the contract gave HLG "sole discretion" not to bill clients for time Wilson worked. Although HLG argues that it must have the ability to decline to bill for unreasonable time, and I agree this is true, the contract itself has no reasonableness limitation built into it. Indeed, it has no limitation whatsoever.
¶27 HLG argues that it has an incentive to bill clients for as much of Wilson's time as it reasonably could bill because, under the contract, HLG would get 2/3 of the money received from clients. But billing a legal client is not as simple as billing as much as you can. For example, HLG might want to keep billing low to encourage a client to stay on as a client. Attorney Hanson's testimony stresses that he was taught by his father that billing was not simply a matter of billing all hours worked. And, under the contract, HLG obviously does not suffer equally for hours worked by Wilson but not billed.
¶28 Second, I agree with the circuit court that the six-month limit on HLG's obligation to share with Wilson payments from clients is "not a fair provision." I can understand putting some outer time limit on HLG's obligation to share payments with Wilson, but I discern no reason why it is fair to set such a short time limit, especially since Wilson had no control over when HLG sent out its billing or when HLG required payment from clients. Indeed, this provision sets up an incentive for HLG to work toward delayed payments once HLG learns that the contract is or would be terminated. That is, if HLG knows that it will not have to share a payment that comes in more than six months hence, the contract incentivizes delayed billing and not promptly pushing clients to pay unpaid bills.
¶29 Third, I agree with the circuit court that the provision stating that the contract would be construed as if "each party participated equally in its drafting" and, somewhat incompatibly, that ambiguity in the contract would not be construed "against the drafting party" is "extremely one-sided." These provisions run contrary to well-reasoned and well-settled contract interpretation principles and are especially repugnant in an agreement between a law firm and a law student.
¶30 For these reasons, I affirm the circuit court's determination that the contract was unconscionable.
II. Wilson's Cross-Appeal
¶31 The circuit court based its monetary award to Wilson on quantum meruit. Recovery in quantum meruit is based upon an implied contract to pay reasonable compensation for services rendered. Ramsey v. Ellis , 168 Wis. 2d 779, 785, 484 N.W.2d 331 (1992). Accordingly, damages in a quantum meruit claim are measured by the reasonable value of the services. Id.
¶32 Wilson apparently argues on appeal that the standard of review is the "clearly erroneous" standard. She goes on to contend, at least nominally, that the circuit court relied on erroneous fact-finding in reaching its decision on an appropriate amount of compensation for Wilson. Wilson's actual argument, however, is not directed at the circuit court's fact-finding. Rather, Wilson actually complains about the circuit court's judgment calls regarding which information to rely on in crafting Wilson's remedy.
¶33 For example, Wilson argues that the circuit court incorrectly failed to look to "the customary rate for a law clerk and new attorney working for a private civil law firm in the Madison area, ... [and] instead applied a rate based on a combination of the judge's recollection of his own payment as a law clerk more than thirty years ago in the public sector and the current hourly payment for a circuit court staff attorney." That is, Wilson does not complain that the circuit court made an erroneous finding of fact as to current pay rates for private sector law clerks and new attorneys. Rather, Wilson argues that the circuit court should not have relied on outdated private sector information (the circuit court's personal experience decades ago) and non-private sector pay rates for circuit court staff attorneys.
¶34 Because Wilson does not actually point to any fact-finding and demonstrate why that fact-finding is clearly erroneous, I am unable to apply the standard of review that Wilson asks me to apply.
¶35 On appeal, Wilson gives me two choices. First, reverse the circuit court's quantum meruit calculation and adopt her calculation. Second, reverse and remand to the circuit court with directions that the circuit court take additional evidence and recalculate damages. I reject both requests.
¶36 Wilson contends that I should adopt the "$75 per hour rate supplied in the contract." In her conclusion, she asks that I apply that rate to all 97.8 hours that Wilson worked for HLG. Earlier, she seems to suggest that I could apply the $75 rate to the 51.4 hours that HLG actually billed its clients for Wilson's work and to 5 more hours she worked on the contingent fee case. Both approaches would require me to engage in fact-finding, which I may not do. Indeed, the first approach, which is the only one Wilson plainly requests, is in direct conflict with the circuit court's finding that Attorney Hanson was credible with respect to declining to bill 41.4 hours of time Wilson submitted because her "work was not of high enough quality to bill."[2]
¶37 As to Wilson's request for a remand to present additional evidence, I reject the request. In the proceeding before the circuit court, it was Wilson's burden to prove her damages. By her own legal argument, that meant presenting evidence of what typical new attorneys in the Madison area actually receive by way of compensation. Wilson's remand request here amounts to a request for a second chance to present evidence that she should have presented the first time around. See Koepsell's Olde Popcorn Wagons, Inc. v. Koepsell's Festival Popcorn Wagons, Ltd. , 2004 WI App 129, ¶44, 275 Wis. 2d 397, 685 N.W.2d 853 (motion for reconsideration denied because it was a "thinly veiled attempt to introduce evidence that should have been introduced at the original summary judgment phase").[3]
¶38 In sum, I do not affirmatively conclude that the circuit court's quantum meruit award was reasonable. Rather, I simply reject Wilson's arguments challenging that award and, therefore, affirm the circuit court in this respect.
Conclusion
¶39 For the reasons stated herein, I affirm the circuit court.
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(a). All references to the Wisconsin Statutes are to the 2017-18 version.

For that matter, the $75 rate in the contract is not evidence of the rate new attorneys are actually paid for all of the hours they submit to their employers. Rather, it is simply an example of the contract hourly rate Wilson would have been paid if her time was billed out at $225 per hour and the client paid within the contract time frame. As indicated in an e-mail from Attorney Hanson, he views this as a rate that is above average and, thus, something that justifies Wilson taking on the risk that HLG will "write off" her hours.

On appeal and in a memorandum presented to the circuit court, Wilson points to Wisconsin Bar Association information indicating the average for billing rates for new attorneys. I do not rely on the information and do not fault the circuit court for declining to do so.
First, in the memorandum and on appeal, Wilson argues that the circuit court should have looked to "the customary rate for a law clerk and new attorney working for a private civil law firm in the Madison area." Wilson relies on case law directing that the reasonable value of services be calculated at "the customary rate of pay for such work in the community at the time the work was performed." Mead v. Ringling , 266 Wis. 523, 529, 64 N.W.2d 222 (1954) (emphasis added). But the Wisconsin Bar Association information is a state average, not a local average. Apart from her HLG contract, Wilson did not present any local pay evidence.
Second, when Wilson made reference to the Wisconsin Bar Association information during the trial, the information was presented in such a way as to suggest that Wilson was proposing that her hours be multiplied by what is plainly a billing rate ($166 to $186 per hour) and not some sort of hourly rate that new attorneys actually receive. When the circuit court interpreted Wilson's suggestion in this fashion, Wilson did not correct the court.
Third, and most importantly, the Wisconsin Bar information Wilson points to simply does not address what new attorneys actually receive by way of compensation.