COURT OF APPEALS
DECISION
DATED AND FILED

December 23, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP374**

STATE OF WISCONSIN

Cir. Ct. No. **2019SC2102**

IN COURT OF APPEALS
DISTRICT IV

PATRICK RASCHER NICHOLS,

  PLAINTIFF-APPELLANT,

V.

MITCH REYNOLDS AND ANNA KRAUSE,

  DEFENDANTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for La Crosse County: RAMONA A. GONZALEZ, Judge. *Affirmed*.

¶1 BLANCHARD, J.[1] Patrick Nichols (the contractor) appeals an order of the circuit court dismissing this small claims action against Mitch

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(a) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

Reynolds and Anna Krause (the homeowners). The contractor was pro se in both the circuit court and now on appeal; the homeowners were pro se in the circuit court and have not filed a brief on appeal. At the end of a trial, the court dismissed the action on the ground that the contractor failed to show that the homeowners had a legal obligation to pay the contractor the $3,261.50 that he claimed they owed him for labor and materials, over and above the $4,182.50 down payment that they had already made on a total written contract price of $8,365.00. I affirm for the following reasons.[2]

¶2      In June 2018, the contractor and the homeowners signed a contract, using a form created by the contractor's painting and restoration business. The homeowners were to pay $8,365.00—half as a down payment and the "remainder upon completion"—and the contractor was to power wash, prepare for painting, and then paint portions of a house and a garage.

¶3      In November 2019, the contractor filed the complaint to initiate this action, giving the following brief statement of facts:

> I am owed money for work that was done beyond the scope of contract and was agreed upon both verbally as well as through text message. I was unable to complete the job due to the fact that [the homeowners] refused to sign off on the extra work added which puts them in breach of the contract.

---

[2] As this court explained to the parties in a December 11, 2020 order, I could summarily reverse on procedural grounds, given the failure of the homeowners to file a brief on appeal. But I conclude that judicial interests, including the interest of justice, are not served by summary reversal of the order, because I conclude that the contractor does not demonstrate that the order is defective. In sum, the contractor fails to present coherent, supported arguments on appeal that he was not given a fair hearing by the circuit court or that the court's decision was defective.

¶4      In an amended answer, the homeowners made allegations that included the following. In April 2019, they gave the contractor the down payment called for in the June 2018 contract. Shortly after that, the contractor began work. The contractor and the homeowners engaged in a series of communications in which the contractor said that he needed to be paid various amount more than $8,365.00 for the work, prompting the homeowners to raise questions and seek additional details. In June 2019, after demanding what he identified as a non-negotiable additional $3,098.00—which would bring the total cost to $11,463.00—the contractor ceased work before the project described in the June 2018 contract was completed. In a counterclaim, the homeowners sought $1,411.50, which they submitted was "the additional amount" that they needed to pay someone else "to finish our house beyond what we would have paid [the contractor] had [the contractor] followed the terms of his contract for the same work."

¶5      At trial, the contractor took sometimes difficult to follow positions, despite what the record reflects were many patient efforts by the circuit court to assist him by asking pertinent questions using readily understandable language. The contractor's position can be boiled down to the following. After the parties entered in the June 2018 contract, through a series of text messages and conversations they agreed that, above and beyond the obligations described in the June 2018 contract, the homeowners would pay the contractor $40 an hour for work that ended up totaling 181 hours. This, according to the contractor, obligated the homeowners to pay him $7,240, in addition to $204 for materials, from which the down payment of $4,182.50 should be deducted, for a total remaining indebtedness of $3,261.50. The contractor further contended that the extra work was required because the homeowners wanted him to use a power drill with a wire

wheel attachment to strip old paint, which added to the work load, even though the homeowners unreasonably refused to sign a new contract to cover the "add-ons" generated by use of the wire wheel.

¶6      However, when the circuit court asked the contractor whether the parties had an agreement as to how many hours of work he would perform outside the written contract, the contractor acknowledged that they had no agreement on this topic.  When the court attempted to get a better understanding of what sort of new agreement between the parties the contractor was attempting to describe, his response was to assert that the homeowners were in "breach of the contract because they wouldn't sign off on these add-ons that we had done."  This assertion of a breach of contract appeared to confuse the circuit court and that confusion seems understandable.  The contractor on multiple occasions failed to explain how it was a "breach" for the homeowners to decline to "sign off" on any work beyond that described in the June 2018 contract or what he claimed should have been the consequence of a breach.  However, after much back and forth with the court, the contractor eventually added this much:  once the homeowners in his view breached the June 2018 contract by failing to sign off on "add-ons," he was entitled to $3,261.50 under the doctrine of unjust enrichment.

¶7      I note that recovery for unjust enrichment would be based on the inequity of allowing the homeowners to retain benefits without paying for them, measured by the benefits that the contractor conferred on the homeowners, and on a possibly related note a claim for quantum meruit would be based on an implied contract to pay reasonable compensation for services rendered, which would be measured here by the reasonable value of the contractor's services.  *See **Ramsey v. Ellis***, 168 Wis. 2d 779, 785, 484 N.W.2d 331 (1992) (describing and distinguishing unjust enrichment and quantum meruit).  But, naturally, the

contractor could not recover for unjust enrichment, or on a claim for quantum meruit, absent an accounting of what benefits he provided that were not paid for or a detailed explanation why the compensation he seeks is reasonable. *See id.* An additional problem for the contractor is that a claim of unjust enrichment cannot survive if the parties have entered into a contract, *see **Continental Cas. v. Wisconsin Patients Comp. Fund***, 164 Wis. 2d 110, 118, 473 N.W.2d 584 (Ct. App. 1991), and the circuit court here plainly credited the testimony of the homeowners to the effect that they intended to enter only one contract with the contractor, the June 2018 contract, and that they did not understand that they were modifying that contract through any of their post-contract communications with the contractor. The court stated to the contractor: "You cannot force [the homeowners] to change the contract without something in writing."

¶8      Further, the circuit court identified the following hole in the contractor's proof: he failed to show what work he performed consistent with the June 2018 contract, as opposed to any separate work. The contractor testified that, before he stopped work on the project, he did much of the preparatory work called for in the June 2018 contract but none of the painting that it called for. When the court asked the contractor to estimate how much of the preparatory work he had completed, he testified that he could not answer that question. The court observed that this was a fundamental shortcoming in his position: "It's your responsibility to prove what [work] you did [that was] more than [what was called for in the June 2018] contract that required this extra payment."

¶9      At one point, the contractor arguably conceded fault to the court. He acknowledged that his work for the homeowners "changed from the beginning" in its nature and scope, and that as a result, looking back, he "should have rewrote the whole contract" for consideration by the homeowners, but he failed to do so.

On a possibly related note, the contractor also acknowledged that he sometimes works without a contract, suggesting a generally lax approach to agreements governing his contracting work, which the court reasonably characterized as "a problem." When the court made the general observation that "as a contractor you're required to have a contract," the contractor replied, "Yeah."

¶10 Moreover, the contractor acknowledged that, consistent with the June 2018 written contract, he could have declined any use of the allegedly complicating wire wheel for paint stripping, and therefore he simply did not need to generate the alleged extra costs that form the basis of this dispute. On that topic, Reynolds testified that "[i]n no way did I ever mandate that" the contractor use the wire wheel, and that Reynolds "would defer to the contractor … to come up with the best way to scrape paint off the house." Krause testified that, after the contractor had used the wire wheel on the house, she encouraged him to use it on the garage as well, so that the buildings would have the same look, but that she was unable to get a clear response from the contractor as to how much extra work this would create for him, and at what proposed additional cost to the homeowners. The court quoted from text messages that corroborated at least partially unsuccessful efforts by Krause to get more specific information from the contractor.

¶11 The court summed up its ruling as follows:

> Mr. Nichols, … you made a contract to do certain work for [$8,365.00]; and then you said, ["F]or the extra work it's [going to] be $40 an hour["]; and that does not help you because what you want to say now is[, "W]e don't have a contract; and I just want you to pay me for my time,["] which is not what you had a contract to do; and there's no contract inside these text messages that says ["T]he contract is now $40 an hour for every hour I put into this project.["]

The court dismissed both the contractor's claim and the homeowners' counterclaim, without objection by the homeowners.

¶12    On appeal, the contractor fails to present a coherent argument tied to the record and recognizable legal standards that shows error by the circuit court. I do my best to understand what arguments he might intend to make, given his pro se status, but I cannot abandon my neutral role to construct arguments for the contractor as if I were his advocate.

¶13    He purports to base his argument on references to provisions in WIS. STAT. ch. 403, the chapter of Wisconsin statutes on Uniform Commercial Code provisions applicable to negotiable instruments, but these references do not match the text of the cited provisions and therefore are of no use.

¶14    The contractor refers to an "amended contract" and to "amended verbal agreements." However, whatever he might mean by these references, they must contradict the positions he took in the circuit court, at least at times, that the homeowners breached the June 2018 contract and that he is therefore entitled to the benefits that he conferred on them based on the inequity of allowing them to retain uncompensated-for benefits. The contractor also fails to show that the court erred in crediting the testimony of the homeowners, as corroborated by the text-message evidence, as showing that the homeowners did not agree to any specific work-for-payment aside from that reflected in the terms of the June 2018 contract. Further, his brief does not even attempt to fill in one of the holes identified by the circuit court:  precisely what the alleged uncompensated-for benefits were, as distinguished from obligations the contractor fulfilled consistent with the June 2018 contract.

*By the Court*.—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.